[No. 18372. ˙ In Bank.—February 23, 1895.]

J. W. INGRAM, RESPONDENT, *v.* E. P. COLGAN, CON-
TROLLER OF STATE, APPELLANT.

106  113
144  684
6144  686
6144  694
144  697

CONSTITUTIONAL LAW—APPROPRIATION—PROMISE—GOOD FAITH OF STATE—
BOUNTY ON COYOTE SCALPS.—The act of 1891, fixing a bounty on coy‑
ote scalps, and providing that "any person who shall kill or destroy any
coyote or coyotes shall be paid a bounty of five dollars out of the general
fund of the state treasury, for each coyote so destroyed," does not make
a specific appropriation out of the general fund, for want of a desig‑
nation of a specified amount of money in the general fund to be devoted
to the payment of such bounties; ̇but the act is only a promise by the
government to pay the bounty, and merely pledges the good faith of
the state to ̇the making of an appropriation for that purpose.        ˙
ID.—POLICE POWER OF STATE.—The act providing for a bounty on coyote
scalps comes within the purview of the general police power of the
state.
ID.—POWER OF LEGISLATURE TO CREATE BOUNTY—OFFER—VESTED RIGHT—
GIFT OF PUBLIC MONEY.—An act creating bounties in consideration of
services to be performed by those upon whom the bounties are to be
conferred, though constituting a mere offer or privilege which may be
taken away by repeal of the statute before the bounties are earned, yet
confers a vested right to the bounty when earned in consideration of
the services rendered, and is not in conflict with the thirty-first section
of article IV of the state constitution prohibiting the legislature to make
any gift of public money.
ID.—DISTINCTION BETWEEN "GIFT" AND "BOUNTY"—CONSIDERATION.—A
"gift" is a voluntary transfer of property without consideration, while
the terms "bounty" and "reward" are nearly allied in meaning, and,
as applied to bounties given by statute, imply a consideration of ser‑
vices to be rendered.
ID.—PRESENTATION OF CLAIMS FOR BOUNTIES—BOARD OF EXAMINERS.—
Claims for bounties for coyote scalps under the act of March 31, 1891,
must be presented to and approved by the state board of examiners, and
the controller cannot draw his warrant for any claim not approved by
that board.

APPEAL from a judgment of the Superior Court of
Sacramento County.

The facts are stated in the opinion of the court.

*Attorney General W. H. H. Hart,* and *Deputy Attorney
General William H. Layson,* for Appellant.

The act is unconstitutional, as it provides for a gift.
A bounty is a gift. (*Deal* v. *Mississippi Co.,* 107 Mo. 464;

CVI. CAL.—8

*Eichelberger* v. *Sifford,* 27 Md. 330; Rapalje's Dictionary; Student's Law Dictionary; Const., art. IV, sec. 31; *Coiner* v. *Folsom,* 13 Minn. 221; *Booth* v. *Woodbury,* 32 Conn. 118, 128; *Bourn* v. *Hart,* 93 Cal. 327; 27 Am. St. Rep. 203; *Mears* v. *Bickford,* 55 Me. 528; *Holt* v. *Holt,* 59 Me. 465.) No gift can be made. (Const., art. IV, sec. 31; *Stevenson* v. *Colgan,* 91 Cal. 651; 25 Am. St. Rep. 230; *Patty* v. *Colgan,* 97 Cal. 252.) Destruction of wild animals does not come under the province of the police or sanitary powers of the state. (*Ex parte Hodges,* 87 Cal. 165.) The act does not of itself make an appropriation of money for the payment of the bounty, but is at most a mere promise to pay or make an appropriation. (*Ristine* v. *State,* 20 Ind. 337; *People* v. *Spruance,* 8 Col. 531–35; *Redding* v. *Bell,* 4 Cal. 333; *Curtis* v. *Moody,* 2 Idaho, 860; *Stratton* v. *Green,* 45 Cal. 150.) The claims must be presented to the state board of examiners. (Pol. Code, secs. 660, 672.)

*Freeman & Bates,* for Respondent.

The word "bounty" signifies money paid or a premium offered to encourage or promote an object or procure a particular act or thing to be done. (*Fowler* v. *Danvers,* 8 Allen, 84; Anderson's Law Dictionary.) Bounties are not forbidden when they fall within the above definition. (Cooley's Constitutional Limitations, 6th ed., 277; *Booth* v. *Woodbury,* 32 Conn. 118, 128; *Speer* v. *School Directors,* 50 Pa. St. 160, 162; *Johns* v. *Commissioners,* 28 Fla. 626 (wildcats); *De Vaughan* v. *Jackson County Commrs.,* 31 Fla. 60 (wildcats); *In re Bounties,* 18 Col. 273; *State* v. *Horton,* 21 Nev. 300 (artesian wells). The right to a bounty is a vested right, so that after a bounty has been earned the legislature cannot deprive the party earning it of his right to its payment. (*People* v. *State Auditors,* 9 Mich. 327 (manufacturing salt); Cooley's Constitutional Limitations, 6th ed., 472.) The destruction of wild animals is a proper subject of police power. (See *State* v. *Noyes,* 47 Me. 212; *People* v. *Budd,* 117 N. Y. 1; 15 Am. St. Rep. 460;

*Thorpe* v. *Rutland etc. Ry. Co.*, 27 Vt. 149; 62 Am. Dec. 625; *State* v. *Heinemann*, 80 Wis. 253; 27 Am. St. Rep. 34; *State* v. *Moore*, 104 N. C. 714; 17 Am. St. Rep. 696.) No particular form of words is necessary to constitute an appropriation, and it is sufficient that the statute declares the purpose to have the state, or some officer thereof, pay moneys out of the public treasury, and from some designated fund therein. (*Sawyer* v. *Colgan*, 102 Cal. 283; *Ireland* v. *Colgan*, 96 Cal. 413; *Proll* v. *Dunn*, 80 Cal. 220; *McCauley* v. *Brooks*, 16 Cal. 29; *Campbell* v. *Commissioners*, 115 Ind. 591; *Ristine* v. *State*, 30 Ind. 338; *Carr* v. *State*, 127 Ind. 204; 22 Am. St. Rep. 624, and note; *Humbert* v. *Dunn*, 84 Cal. 57; *Reynolds* v. *Taylor*, 43 Ala. 420; *State* v. *Kenney*, 10 Mont. 485.) It is not necessary that an act making an appropriation shall limit the sum appropriated. This is clear from the decisions sustaining the appropriations in favor of institutions supporting indigent persons. These statutes have never undertaken to fix the number of persons for whose support allowance should be made, nor to determine that no sum beyond an amount specified shall be allowed in one year, or otherwise, but these statutes have been constantly sustained. (*People* v. *Miner*, 46 Ill. 384, 389; *San Francisco* v. *Dunn*, 69 Cal. 73; *County of Yolo* v. *Dunn*, 77 Cal. 133; *Grand Lodge* v. *Markham*, 102 Cal. 169.) There is no necessity for the presentation of the claims to the board of examiners. The general construction of statutes like that relied upon by the attorney general has been that where the claim has been in any manner made certain, so that no duty remains except to make payment thereof, such claim need not be presented to any examining or auditing board. (*Meyer* v. *Porter*, 65 Cal. 67; *Freehill* v. *Chamberlain*, 65 Cal. 603; *County of Greene* v. *Daniel*, 102 U. S. 187, 194; *Lincoln County* v. *Luning*, 133 U. S. 532.)

HENSHAW, J.—Upon joint petition of appellant and respondent this cause was ordered to be heard in Bank for the determination of the single question whether or

not the act under consideration ("An act fixing a bounty on coyote scalps," Stats. of 1891, p. 280) made appropriation for the payment of claims arising under it.

The opinion heretofore rendered (filed October 30, 1894) stands confirmed, and what is now added is to be construed with it.

The objections raised to the sufficiency of the act are: 1. That no appropriation at all is made by it; 2. That, if an appropriation is made, that appropriation is void for uncertainty in amount.

It is provided by article IV, section 22, of the constitution that "no money shall be drawn from the treasury but in consequence of appropriations made by law, and upon warrants duly drawn thereon by the controller." This inhibition is supplemented by subdivision 17 of section 433 of the Political Code: "No warrant must be drawn unless authorized by law, and upon an unexhausted, specific appropriation provided by law to meet the same. Every warrant must be drawn upon the fund out of which it is payable, and specify the services for which it is drawn, when the liability accrued, and the specific appropriation applicable to the payment thereof."

The constitution of 1849 (art. IV, sec. 23) provided: "No money shall be drawn from the treasury but in consequence of appropriations made by law." By act of the legislature in 1854 the duties of the controller were expressed in terms substantially the same as those now found in subdivision 17 of section 433 of the Political Code, above quoted. (Stats. 1854, p. 29.)

The laws of the state regarding appropriations have thus been uniform from a very early day, and, if any contrariety of opinion be found in the adjudicated cases, it cannot be explained upon the ground of changed provisions in the law.

One of the earliest cases upon the question of appropriation is that of *McCauley* v. *Brooks*, 16 Cal. 28. The act there in question provided that the sum of fifteen thousand dollars per month, or a sum less than that in accordance with the contract to be entered into, "is

hereby appropriated out of any money in the treasury not otherwise appropriated." It was claimed that no specific appropriation of funds in the treasury had been made. The opinion by Field, C. J., is an elaborate exposition of the law, and in it he says: "To an appropriation within the meaning of the constitution nothing more is requisite than a designation of the amount and the fund out of which it shall be paid. It is not essential to its validity that funds to meet the same should be at the time in the treasury. As a matter of fact there have seldom been in the treasury the necessary funds to meet the several amounts appropriated under the general appropriation acts of each year. The appropriation is made in anticipation of the receipt of the yearly revenues. It constitutes, indeed, the authority of the controller to draw his warrants, and of the treasurer, when in funds, to pay the same, and that is all. When the constitution, therefore, says that no money shall be drawn from the treasury, but in consequence of appropriations made by law, it only means that no money shall be drawn except in pursuance of law; and, when the act of April 13, 1854, provides that no warrants shall be drawn except there be an 'unexhausted, specific appropriation' to meet the same, it means only that the controller shall not draw a warrant for a specific object when he has already drawn for the full amount of the appropriation made for that object."

The true test as to whether any particular language in an act is sufficient to make an appropriation is here found. "To an appropriation, within the meaning of the constitution, nothing more is requisite than a designation of the amount and the fund out of which it shall be paid." If the amount be certain, one of the reasons for the constitutional requirements is complied with, in that the people are enabled to determine how much of their money is to be devoted to the named purpose. The designation of the fund likewise enables the people to see how much of the moneys set apart to a particular fund is to be drawn from it and used for the

specific end. But under our system, countenanced by the custom of years, it is not necessary in all cases that the act in terms should name the fund. The general fund itself is defined to be "the moneys received into the treasury, and not specifically appropriated to any other fund." (Pol. Code, sec. 454.) From these moneys all appropriations are paid which are not made payable out of any other especially named fund.

The language of the act here under consideration is as follows: "Any person who shall kill or destroy any coyote or coyotes shall be paid a bounty of five dollars out of the general fund in the state treasury, for each coyote so destroyed." The question remains whether, measured by the rule above given, this language constitutes an appropriation. We think not. The fund from which the bounties are to be paid is explicitly designated, but the amount of money in the general fund devoted to the payment of these bounties is not specified. The language lacks the first essential to an efficient appropriation. There is no designated amount, and, consequently, there is no "specific appropriation" to be exhausted, unless it can be said that the whole general fund is set aside as a specific appropriation to the end in view, a proposition not seriously to be considered. (*Redding* v. *Bell*, 4 Cal. 333.)

It is freely conceded that the use of technical words in a statute is not necessary to create an appropriation. But, while no set form of language is requisite, upon the other hand there are some things which plainly enough are not severally an appropriation. A promise by the government to pay money is not an appropriation. A duty on the part of the legislature to make an appropriation is not such. A promise to make an appropriation is not an appropriation. Usage of paying money in the absence of an appropriation cannot make an appropriation for future payment. (*Ristine* v. *State*, 20 Ind. 333.) The utmost that can be claimed for the act under consideration is that it pledges the good faith of the state to the making of an appropriation.

Herein the language of the supreme court of Colorado, in Institute etc. v. Henderson, 18 Col. 105, is peculiarly apposite: "To permit the disbursement of an indefinite amount of money, as these bounty acts contemplate, is to introduce an element of uncertainty into these calculations that will seriously embarrass both the legislature and the departments in giving effect to our state constitution with relation to the levying of taxes to meet appropriations. If the legislature desires to pay bounties, it may do so for all proper purposes by making the necessary appropriations therefor. Thus, the public funds of the state will be protected, and the safeguards provided by the vigilance of the framers of our fundamental law will be given a construction best calculated to prevent the evils aimed at."

The conclusion thus reached is in nowise affected by such cases as San Francisco v. Dunn, 69 Cal. 73, and Grand Lodge v. Markham, 102 Cal. 169. In those cases the acts construed made contribution to the support of indigents, under article IV, section 22, of the constitution. As to the act under consideration in Grand Lodge v. Markham, supra, the constitution itself provides the manner of the making of the appropriation, and the act conforming to the manner prescribed has the constitution of the state for its direct authority. In San Francisco v. Dunn, supra, it was held that no legislative action is required to give force to the constitutional proviso, and that upon the happening of the contingency the language of the constitution, ex proprio vigore, acted as an appropriation, and qualified the general constitutional inhibition. These cases, therefore, are not in point upon the present question.

For this reason, in addition to those heretofore given, the judgment is reversed, and the court below directed to dismiss the writ.

TEMPLE, J., GAROUTTE, J., HARRISON, J., and McFARLAND, J., concurred.

BEATTY, C. J., and VAN FLEET, J., did not participate in this decision.

The following is the opinion above referred to, rendered in Bank on the 30th of October, 1894:

SEARLS, C.—The act of the legislature of the state of California, approved March 31, 1891, entitled "An act fixing a bounty on coyote scalps" (Stats. 1891, p. 280), provides in its first section that "Any person who shall kill and destroy any coyote or coyotes, in any county of this state, after the passage of this act, shall be paid a bounty of five dollars out of the general fund in the state treasury for each coyote so destroyed."

The second section of the act provides that the person killing any coyote, as provided in section 1, shall present the scalp containing the nose and ears of the coyote destroyed to any officer authorized to administer oaths, and make and subscribe to an affidavit showing time and place that such animal was killed, which scalp and affidavit may be deposited with the clerk of the board of supervisors of the county in which such coyote was killed.

Section 3 provides that the board of supervisors shall quarterly determine the number of scalps deposited with the clerk, and by whom, and shall give to each person who may have deposited scalps a certificate certified by the clerk showing the number of scalps deposited by such person, and the sum due him at the rate of five dollars per scalp, and then proceeds as follows: "Such certificate may be presented to the controller of the state, who may draw his warrant on the general fund in the state treasury for the sum named therein, in favor of the person entitled thereto."

The remaining sections provide for the destruction of the scalps, and that no bounty shall be paid for scalps unless presented within three months after the coyote is killed.

The respondent, J. W. Ingram, in 1893 killed seventy-

three coyotes in the county of Kern, state of California; in due time presented the scalps, and made affidavit as by law provided, and in due and proper form received, after an examination, etc., a certificate of the clerk under seal of the board, showing that he had killed seventy-three coyotes, and that there was due said Ingram the sum of three hundred and sixty-five dollars from the state of California.

The certificate was presented to appellant, as controller of state, April 26, 1894, and a demand made that he, the said controller, draw his warrant on the general fund in the state treasury in favor of said J. W. Ingram for said sum of three hundred and sixty-five dollars, which was refused.

Respondent thereupon filed an affidavit in the superior court in and for the county of Sacramento, setting out the foregoing facts, and showing a compliance with the terms of the statute, and averring that "after allowing and paying all warrants drawn by the state controller against the general fund, and all claims allowed by the state board of examiners for the forty-fifth fiscal year, there remains more than sufficient in said fund to meet the said warrant demanded by the said Ingram."

The sworn affidavit or petition admitted "that said claim of said Ingram has never been presented to nor acted upon by the state board of examiners."

An alternative writ of mandate issued to appellant as per the prayer of the sworn petition therefor.

Appellant appeared and demurred to the affidavit and petition upon various grounds, among which were 1. That it did not state facts sufficient to constitute a cause of action; 2. That it fails to show that the claim was presented to the board of examiners before being presented to the state controller; 3. It does not show that said claim is exempt from the provisions of section 672 of the Political Code; 4. It fails to show that there is an appropriation or available fund for the payment of the claim; 5. That said act is unconstitutional and void, in that it seeks to create an obligation on the part

of the state which would be a gift, and without sufficient consideration.

The demurrer was overruled, and appellant refusing to answer, such proceedings were thereupon had that a peremptory writ issued to appellant, commanding him to draw his warrant upon the treasury, etc.   Defendant appeals.

The statute in question comes within the purview of the police powers of the state.   This power is said to extend to the protection of the lives, limbs, health, comfort, and quiet of all persons, and the protection of all property within the state.   It is a power inherent in the state by virtue of, and one of the attributes of, its sovereignty.

Under the exercise of this general police power, persons and property are subjected to restraints and burdens in order to secure the general comfort, health, and prosperity of the state, of the perfect right in the legislature to do which, as was said by Redfield, C. J., in *Thorpe* v. *Rutland etc. R. R. Co.*, 27 Vt. 140; 62 Am. Dec. 625: "No question ever was or upon acknowledged general principles ever can be made, so far as natural persons are concerned."

It is co-extensive with self-protection, and is often referred to as "the law of overruling necessity."

It is that inherent and plenary power in the state which enables it to prohibit all things hurtful to the comfort and welfare of society.   (*Lakeview* v. *Rose Hill Cemetery Assn.*, 70 Ill. 192; 22 Am. Rep. 71.)

How far the provisions of the legislature can extend is always submitted (subject to constitutional limitations) to its discretion, provided its acts do not go beyond the great principle of securing the public safety; and its duty to provide for the public safety, within well-defined limits and with discretion, is imperative.

"All laws for the protection of lives, limbs, health, and quiet of the person, and for the security of all property within the state, fall within this general power of government."   (*State* v. *Noyes*, 47 Me. 189.)

"Any law which goes beyond that principle, which undertakes to abolish rights, the exercise of which does not involve an infringement of the rights of others, or to limit the exercise of rights beyond what is necessary to provide for the public welfare and the general security, cannot be included in the police power of the government. It is a government usurpation, and violates the principles of abstract justice, as they have been developed under our republican institutions." (Tiedeman's Limitations on Police Powers, 4, 5.)

The statute of March 31, 1891, is not within the limitation to the exercise of the police power.

That coyotes are a pest and scourge to the breeders of sheep and other small domestic animals is matter of common knowledge. To provide adequate means of defense against this common enemy to those engaged in an important industrial pursuit is clearly within the general police powers of the legislative branch of the government, through which all police power is exercised.

The statute is not, then, void in the sense that it violates the fundamental principles of free government, and infringes upon the original rights of the citizen.

This remark is indulged for the reason that it has been said by some of the most eminent jurists of our country that the state legislature, in the absence of constitutional limitations, is not so far omnipotent that it can pass valid laws violative of the fundamental theories upon which enlightened government is constructed. (*Calder* v. *Bull,* 3 Dall. 386; *Wilkinson* v. *Leland,* 2 Pet. 657; *Taylor* v. *Porter,* 4 Hill, 140; 40 Am. Dec. 274; *Goshen* v. *Stonington,* 4 Conn. 209; 10 Am. Dec. 121; *Varick* v. *Smith,* 5 Paige, 137; 28 Am. Dec. 417; *Griffith* v. *Commissioners,* 20 Ohio, 609; *Ross' case,* 2 Pick. 169.)

There is no suggestion that the statute infringes the federal constitution.

It remains, then, to inquire, Does it violate any provision of the constitution of this state?

The contention of appellant is that the bounty pro-

vided to be paid by the statute is a gift, and inhibited by the thirty-first section of article IV of the constitution of California, which, so far as applicable, is as follows:

"The legislature shall have no power to give or to lend, etc. . . . . Nor shall it have power to make any gift, or authorize the making any gift, of any public money or thing of value to any individual, municipal or other corporation whatever."

A *gift* has been judicially defined as "a voluntary transfer of his property by one to another, without any consideration or compensation therefor." (*Gray* v. *Barton*, 55 N. Y. 72; 14 Am. Rep. 181. To the same effect is 2 Blackstone's Commentaries, 440; 2 Stephen's Commentaries, 102; 2 Kent's Commentaries, 437.)

A *bounty* signifies moneys paid or a premium offered to encourage or promote an object or procure a particular act or thing to be done. (*Fowler* v. *Danvers*, 8 Allen, 84.)

A sum of money or other things given, generally by the government, to certain persons for some service they have done or are about to do the public. (*Abbe* v. *Allen*, 39 How. Pr. 484.)

The terms "bounty" and "reward" are nearly allied in meaning, the distinction being the former is said to be the appropriate term where the services or action of many persons are desired, and each who acts upon the offer may entitle himself to the promised gratuity without prejudice from or to the claims of others; while a reward applies to the case of a single service, which can be only once performed, and therefore will be earned only by the person or co-operating persons who succeed while others fail. (Black's Law Dictionary, title, Bounty.)

A primary meaning of bounty is, goodness, kindness, virtue, worth; 2. Liberality in bestowing gifts or favors, gracious or liberal giving, generosity, munificence; 3. A premium offered or given to induce men to enlist in the public service, or to encourage any branch of in-

dustry, as husbandry or manufactures. (Webster's Dictionary.)

As applied to bounties given by statute, there is a consideration implied; so long as the consideration is not rendered it remains a mere offer or privilege, which may be taken away by a repeal of the statute; but, when earned by complying with the conditions of the statute, the right to the bounty becomes vested. (Cooley's Constitutional Limitations, 6th ed., 471, 472; *East Saginaw Salt Mfg. Co.* v. *East Saginaw*, 19 Mich. 259; 2 Am. Rep. 82; 13 Wall. 373; *People* v. *Board of Auditors*, 9 Mich. 327.)

There being a consideration for the claim of respondent rendered by him under the offer of the statute, the money claimed is not a *gift*, and is not, therefore, obnoxious to the provision of the constitution quoted *supra.* (*Ryer* v. *Stockwell*, 14 Cal. 134; 73 Am. Dec. 634.)

Our attention is not called to any other constitutional provision, either state or federal, with which the statute in question is claimed to conflict; hence we conclude that, as the statute comes within the *general welfare* for which the legislature is authorized to provide under its police powers, and not being violative of the fundamental law, must be upheld as a valid and subsisting law.

Q. Should the claim have been presented to the state board of examiners?

The trial court evidently proceeded upon the theory that, as the act of March 31, 1891, provided that any person who shall kill and destroy any coyote or coyotes in any county of the state shall be paid a bounty of five dollars for each coyote so killed out of the general fund of the state treasury; and provided for taking the proof thereof and issuing a certificate therefor by the board of supervisors of the proper county; and provided that " such certificate may be presented to the controller of the state, who may draw his warrant on the general fund in the state treasury," etc., dispensed with the necessity of a presentation of the claim to the state board of examiners.

Section 660 of the Political Code provides that any person having a claim against the state, for which an appropriation has been made, may present the same to the board (of examiners); if the board approves the same they must under section 661 indorse their approval thereon, and transmit the same to the controller, who must thereupon draw his warrant, etc.

If no appropriation has been made for the payment of a claim provided for by law, or if an appropriation made has been exhausted, the board must, upon approving it, transmit it to the legislature with a statement of their approval.

Section 672 is as follows:

"SEC. 672. The controller must not draw his warrant for any claim unless it has been approved by the board, and, when hereafter the controller is directed to draw his warrant for any purpose, this direction must be construed as subject to the provisions of this section, unless the direction is accompanied by a special provision exempting it from its operation."

Section 673 exempts official salaries and claims upon the contingent fund of either house of the legislature from the operation of the foregoing sections.

It will be perceived that by section 672 a direction to the controller to draw his warrant in payment of a claim which has not been approved by the board of examiners is not sufficient unless it is accompanied by a special provision exempting it from the operation of that chapter.

We find nothing in the provision of the statute in question exempting the claims therein provided for from the section.

Respondent contends that there was no necessity for presenting the claim to the board of examiners; that it had been audited and made certain by the action of the board of supervisors, so that no duty remained except to make payment, and, in support of this view, we are referred to *Meyer* v. *Porter*, 65 Cal. 67; *Freehill* v. *Chamberlain*, 65 Cal. 603; *County of Green* v. *Daniels*, 102 U. S. 187; *Lincoln County* v. *Luning*, 133 U. S. 532.

*Meyer* v. *Porter, supra,* was a case in which a mandate was sought against the treasurer of Sacramento to compel him to pay out of funds in the city treasury certain past due and payable coupons belonging to bonds issued by the city under a statute passed in 1858, and which provided an interest and sinking fund for the payment of the interest annually and the bonds at maturity.

It was claimed on behalf of the city, among other things, that the coupons should have been presented for examination, audit, and allowance to the board of trustees and auditor pursuant to a statute in 1863.

This court held, however, that as the law under which the bonds issued made it the duty of the treasurer to pay the coupons, in the manner and out of the fund provided for that purpose, no warrant was necessary to authorize their payment.

In *Freehill* v. *Chamberlain, supra,* the same question was raised, and the court held that the statute under which the bonds were issued established them as debts to be paid, and hence that neither the auditor nor the board of trustees had any discretion or authority to reject them or prevent payment.

It will be observed that these cases involved contracts entered into by the city under and pursuant to a statute authorizing them so to do, and providing the time, place, and manner of payment, and that the act of 1863 (Stats. 1863, p. 415) was a law passed long subsequently, and imposing new burdens upon the holders of city bonds.

In *County of Green* v. *Daniels, supra,* where a like question was raised, it was held that the issuing of the bonds by the county court, signed by its presiding officer, was the equivalent of auditing by the same body, as required by a statute in case of claims against the county, and that the amount and validity of the liability were definitely fixed when the warrants issued.

In *Lincoln County* v. *Luning, supra,* it was held that a similar clause requiring claims to be presented to the

county commissioners, etc., applied only to unliquidated claims and accounts, and did not apply to bonds and coupons.

*Sawyer* v. *Colgan,* 102 Cal. 283, related to the duty of the controller to issue his warrant in payment of coupons upon bonds issued under an act passed in 1857, known as Indian war bonds, and it was held that, in view of the provisions for their payment under the law, it was not necessary to present such coupons to the examiners.

The board of examiners was not provided for until 1858 (Stats. 1858, p. 212). Since that date it has been in force, and section 762 of the Political Code embodies substantially the same provision as section 5 of the original act.

A *claim* is a demand of some matter as of right made by one person upon another, to do or forbear to do some act or thing as a matter of duty.

The controller must not draw his warrant for any claim, unless it has been approved by the board, and if directed so to do it must be subject to section 682 of the Political Code, unless the direction is accompanied by a special provision exempting it from the provision of said section 672.

The statute in regard to bounties for killing coyotes may be construed to direct the controller to draw his warrant, but it does not in any way exempt it from the operation of such section.

Whatever the rule may be in cases which do not come within the technical definition of the term *claim,* we are of opinion that if any force is to be given to this section in any case it applies to the present one.

The controller can never draw his warrant upon the treasurer except when directed so to do by some law; and if such direction alone is sufficient to require it, then we at once do away with the force and effect of a salutary provision of the statute enacted as a safeguard of the treasury.

It will not do to say that the supervisors have audited

the claim, and that that is sufficient.    The statute has designated the board of examiners as the body by which the audit must be made, and either such audit of a claim must be had, or a special provision exempting the claim from such audit must be contained in the direction to the controller before it becomes his duty to issue his warrant.

For this reason we are of opinion the court below erred in awarding the writ of mandate against the controller, and the judgment should be reversed and the court below directed to dismiss the writ.

Belcher, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed and the court below directed to dismiss the writ.      De Haven, J.,      Garoutte, J.,
                      McFarland, J.,    Harrison, J.

Fitzgerald, J., concurred in the judgment.

Beatty, C. J., and Van Fleet, J., did not participate in the foregoing decision.