[S. F. No. 15204. In Bank.—November 28, 1934.]

FRED W. MEYER, Petitioner, v. RAY L. RILEY, as State Controller, etc., Respondent.

40

E. R. Hoerchner for Petitioner.

U. S. Webb, Attorney-General, and W. R. Augustine, Deputy Attorney-General, for Respondent.

SHENK, J.—This proceeding in *mandamus* is submitted on a general demurrer to the petition.

From July 1, 1933, to April 30, 1934, the petitioner was chief of the division of service and supply in the department of finance, an office created by the legislature in 1931 by an amendment to section 656 of the Political Code. Pursuant to the provisions of that section he was appointed by the governor and his salary was fixed by the director of finance with the approval of the governor at $475 per month. Under section 663 of the Political Code the chief of the division of service and supply is *ex officio* a member of the state board of control. After his appointment the petitioner performed the duties of his office. He filed his demands for payment of his salary and upon the refusal of the respondent controller to audit and approve the same, this proceeding was commenced for the purpose of compelling such approval.

The petitioner, during the period mentioned, was a *de jure* officer performing important state functions as chief of his division and as a member of the board of control. He has performed the service required of him and is entitled to compensation for such service if there is legal authority

for its payment. For such authority he points out that prior to his appointment and service his salary was fixed in accordance with section 656 of the Political Code and that no provision was made in the budget of 1933 for the payment thereof.. He therefore concludes that his salary is payable from the general fund under section 1029 of the Political Code, which provides: "Unless otherwise provided by law, the salaries of officers must be paid out of the general fund in the state treasury . . . " This provision is sufficient authority for the payment of said salary out of the general fund, if other provisions of the law do not prevent it.

■ The respondent resists the payment on two main grounds: First, it is insisted that the fixing of the salary of a public officer is a legislative act, and that section 656 of the Political Code, in so far as it provides for the fixing of the salary of the chief of the division of service and supply by the director of finance with the approval of the governor, is invalid as an unlawful delegation of legislative power. That the point as to unlawful delegation is not well taken is indicated, with supporting authorities, in *Millholen* v. *Riley*, 211 Cal. 29, at page 35 [293 Pac. 69].

Second, the respondent invokes section 22 of article IV of the Constitution, which provides that "no money shall be drawn from the treasury but in consequence of appropriation made by law", and calls attention to the fact that no specific appropriation was made in the budget enactment of 1933 for the payment of the salary of the petitioner, and to the further fact that item 38 of the 1933 budget bill is as follows: "For support of Department of Finance, nine hundred nine thousand eight hundred six and 35/100 dollars; provided that no money hereby appropriated shall be used for salary and expenses of Chief of the Division of Service and Supply . . . " Accordingly it is insisted that there was not only no appropriation made by the legislature in 1933 for the payment of said salary, but that the legislature specially directed that no such salary be paid. Conceding the absence. of any appropriation in the budget enactment of 1933 for the payment of said salary, and having in mind the prohibition of item 38 of that bill, it does not necessarily follow that there is no authority in law for the payment thereof. ■ In other words, there

may exist an impossibility of payment of the salary of a state officer from any *budget* allowance, and still be authority otherwise in law for the payment thereof. (*Humbert* v. *Dunn*, 84 Cal. 57 [24 Pac. 111].)

█ It is difficult to understand the legislative process by which the legislature continued in effect the enactments creating the office of chief of division of service and supply, and fixing his salary, and making him a member *ex officio* of the state board of control with the attendant important duties to be performed by such officer, and at the same time provide that no money appropriated *by the budget bill* in 1933 be used for the payment of such salary, unless it be either that the legislature intended that the continuing provisions of said section 1029 should be sufficient to authorize such payment, or that other measures were pending or contemplated during the legislative session of 1933 looking to a reorganization of the department of finance with the elimination of the office of the chief of the division of service and supply, and the substitution of some other officer as a member of the state board of control. If the former were intended, the purpose was evidenced by the continuing legislation left undisturbed, which would, as indicated, be sufficient warrant for the payment of such salary. If the latter were the legislative plan, it fell short of its purpose, for we have discovered no legislation in 1933 to reorganize the department of finance or to abolish the office of petitioner. We therefore find an important state office in existence under a valid statute, an officer of the state occupying the same under a valid appointment, with his salary fixed in accordance with law, all prior to the enactment of the 1933 budget bill. We also find that the duties of such officer have been performed by the petitioner during the period involved, and we conclude that he is entitled to the payment of his salary under section 1029 of the Political Code, notwithstanding the inhibition of the budget enactment of 1933.

In a similar situation this court said in *Humbert* v. *Dunn, supra:* "The limitation that 'no money shall be drawn from the treasury but in consequence of appropriations made by law' is taken literally from the Constitution of the United States. Its object is to secure to the legislative department of the government the exclusive power of deciding how, when, and for what purposes the public funds

shall be applied in carrying on the government. (2 Opinions Attorney-General, 670.) It had its origin in parliament in the seventeenth century, when the people of Great Britain, to provide against the abuse by the king and his officers of the discretionary money power with which they were vested, demanded that the public funds should not be drawn from the treasury except in accordance with express appropriations therefor made by parliament (Hallam's Constitutional History, 555); and the system worked so well in correcting the abuses complained of, our forefathers adopted it, and the restraint imposed by it has become a part of the fundamental law of nearly every state in the Union. To the legislative department of the government is intrusted the power to say to what purpose the public funds shall be devoted in each fiscal year, and, as stated before, when the legislature has clearly indicated its will as to the claim which is to be paid and the fund from which it is to be paid, the constitutional requirement is satisfied, and no particular form of words is essential to make the appropriation valid.'' (See, also, *Jackson* v. *Baehr,* 138 Cal. 266 [71 Pac. 167]; *Harrison* v. *Horton,* 5 Cal. App. 415 [90 Pac. 716]; 46 Cor. Jur., pp. 1014, 1028.)

The respondent further insists that item 38 of the 1933 budget enactment is authority ''otherwise provided by law'' as contemplated by section 1029 of the Political Code and that the effect thereof is to prohibit the payment. We do not so construe section 1029. That section plainly and rightfully assumes that the salary of a state officer shall be paid from some source, and unquestionably means that if payment thereof be not otherwise provided for, it shall be made from the general fund.

The respondent concedes that if the salary of the petitioner had been fixed in a definite amount in section 656 of the Political Code, such provision, together with said section 1029, would constitute a valid appropriation. But he contends that since under section 656 this salary was subject to increase at the option of the director of finance and the governor, the amount thereof would lack ''the first essential to an efficient appropriation'' under the rule laid down in *Ingram* v. *Colgan,* 106 Cal. 113 [38 Pac. 315, 39 Pac. 437, 46 Am. St. Rep. 221, 28 L. R. A. 187]. That is the coyote scalp bounty case wherein it appeared that al-

though the legislature had provided for the payment by the state from the general fund of bounties for coyote scalps at five dollars per scalp, no limitation as to the amount to be expended for that purpose had been specified, no valid appropriation had therefore been made, and the utmost that could be said for the act was that it pledged the good faith of the state to the making of an appropriation upon sufficient proof of the destruction of coyotes as provided in the act. While it is true that the legislature did not set a limit upon the amount of salary to be paid to the petitioner, it did provide a method by which that amount could be and it was made certain by the joint action of the director of finance and the governor, to whose discretion the legislature had committed the authority to fix the amount. As indicated, the delegation of power was valid, and the exercise of the power has not been shown to have been invalid.

Let the peremptory writ issue as prayed.

Waste, C. J., Preston, J., Curtis, J., and Seawell, J., concurred.

LANGDON, J., Dissenting.—I dissent. There is no legal foundation for petitioner's claim, and the opinion inaugurates a practice which is dangerous in the extreme. As pointed out in said opinion, the established principle, expressly stated in our Constitution, requires a legislative appropriation as a basis for the payment of money from the public treasury. The obvious method of appropriating money for a particular purpose is the specific designation of a certain sum for that purpose. There was no such designation here. There might also be an appropriation, under the decisions, if section 656 of the Political Code had fixed a salary for petitioner. In such case, construing this section with section 1029 of the same code, the salary fixed by law would be payable out of the general fund. (See *Harrison* v. *Horton,* 5 Cal. App. 415 [90 Pac. 716]; *Humbert* v. *Dunn,* 84 Cal. 57 [24 Pac. 111].)

But the instant case falls entirely outside the rule of these decisions. Assuming that section 656, in providing that petitioner's salary shall be fixed by the director of finance with the approval of the governor, is a valid statute

establishing his position, it still is not a legislative appropriation. It does not designate an amount, and therefore "lacks the first essential to an efficient appropriation". (*Ingram* v. *Colgan,* 106 Cal. 113 [38 Pac. 315, 39 Pac. 437, 46 Am. St. Rep. 221, 28 L. R. A. 187].) Moreover, section 1029 states that the payment of salaries shall be made out of the general fund "unless otherwise provided by law". The Budget Act certainly provides otherwise when it states that "no money hereby appropriated shall be used for salary and expenses of Chief of the Division of Service and Supply".

It is unsound to start with the premise that petitioner has performed the duties of an important state office under a valid statute and to conclude therefrom that he is entitled to compensation. The constitutional requirement of a valid appropriation is entirely clear and is well known. Petitioner, in taking the office and performing services, was presumably aware of the fact that no valid provision for compensation existed, and that in unmistakable terms the legislature had left his compensation out of the appropriation bill. We cannot destroy one of the most fundamental of our constitutional safeguards out of a sympathetic desire to pay petitioner for services which he rendered knowing the risk of nonpayment.