TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

---

OPINION

of

DANIEL E. LUNGREN
Attorney General

CLAYTON P. ROCHE
Deputy Attorney General

:
:
:
:
:
:
:
:
:
:
:
:
:

No. 92-303

JULY 7, 1992

---

THE HONORABLE PAT NOLAN, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:

May fines for deposit in a county's fish and wildlife propagation fund be transferred to the state's General Fund?

CONCLUSION

Fines for deposit in a county's fish and wildlife propagation fund may not be transferred to the state's General Fund.

ANALYSIS

Section 1463.001 was recently added to the Penal Code. (Stats. 1991, ch. 189, § 19; Stats. 1991, ch. 1168, § 6.) It states in part:

"All fines and forfeitures imposed and collected for crimes other than parking offenses resulting from a filing in a court shall as soon as practicable after receipt thereof, be deposited with the county treasurer, and each month the total fines and forfeitures which have accumulated within the past month shall be distributed, as follows:

"(a) The state penalties, county penalties, special penalties, service charges, and penalty allocations shall be transferred to the proper funds as required by law.

"(b) The base fines shall be distributed, as follows:

"(1) Any base fines which are subject to specific distribution under any other section shall first be distributed to the specified funds of the state or local agency.

Any amount due to the county, including amounts collected pursuant to Section 1203.1 but excluding fees to cover the actual cost of formal probation, shall be divided between the state and county, with 75 percent transferred to the General Fund and 25 percent transferred to the proper funds of the county . . . ."[1]

The question presented for analysis is whether fines to be deposited in a county's fish and wildlife propagation fund (Fish & G. Code, §§ 13003, 13100)[2] may be "divided between the state and county, with 75 percent transferred to the General Fund . . . ." (Pen. Code, § 1463.001, subd. (b)(1).) We conclude that such fines may not be transferred to the state's General Fund.

Fish and game fines are initially split evenly between the state and the particular county in which the underlying criminal offense occurs. Section 13003 provides:

"Unless otherwise provided by law, all fines and forfeitures imposed or collected in any court of this state for violations of any of the provisions of this code or regulations made pursuant thereto, or any other law providing for the protection or preservation of birds, mammals, fish, reptiles, or amphibia, shall be deposited as soon as practicable after the receipt thereof with the county treasurer of the county in which the court is situated. Amounts so deposited shall be paid at least once a month as follows:

"(a) One-half to the Treasurer, by warrant of the county auditor drawn upon the requisition of the clerk or judge of the court, for deposit in the Fish and Game Preservation Fund in the State Treasury on order of the Controller. At the time of such transmittal, the county auditor shall forward to the Controller, on such form or forms as the Controller may prescribe, a record of the imposition, collection, and payment of the fines or forfeitures. The department may employ legal counsel and may expend these funds to pay the costs of legal action brought in the name of the people relating to the enforcement of this code by a district attorney, city attorney, or the department, as appropriate.

"(b) One-half to the county in which the offense was committed."[3]

While the state's portion is deposited in the state's Fish and Game Preservation Fund as set forth in subdivision (a) of section 13003, the county's share is deposited into the county's fish and wildlife propagation fund. Section 13100 provides:

"The amounts paid to and retained in the county treasury pursuant to Section 13003 shall be deposited in a county fish and wildlife propagation fund and expended for the protection, conservation, propagation, and preservation of fish and wildlife, under the direction of the Board of Supervisors, pursuant to this chapter."

Permissible expenditures from a county's fish and game propagation fund are set forth in section 13103.

---

[1]"Amounts collected pursuant to Section 1203.1" are fines imposed as part of an order granting probation. (Pen. Code, § 1203.1.)

[2]All references hereafter to the Fish and Game Code are by section number only.

[3]"The department" is the Department of Fish and Game. (§ 37.)

Returning to the provisions of Penal Code section 1463.001, subdivision (b), we find that the fish and game fines in question "are subject to specific distribution under any other section," i.e., section 13003, and therefore "shall first be distributed to the specified funds of the state or local agency." The issue, then, is whether the "amount due to the county" must thereafter be "divided between the state and county, with 75 percent transferred to the General Fund . . . ."[4] The state receives the first half of the fines for deposit into its Fish and Game Preservation Fund; may it receive 75 percent of the second half for deposit into its General Fund?

The answer to that question is "no." Penal Code section 1463.001 must be interpreted so as not to violate the Constitution. Section 9 of article XVI of the Constitution provides:

"Money collected under any State law relating to the protection or propagation of fish and game shall be used for activities relating thereto."

This constitutional provision was first adopted in 1942 (former art. IV, § 25 5/8) and renumbered in 1966 (former art. XII, § 22). It previously stated:

"All money collected under the provision of any law of this State relating to the protection, conservation, propagation, or preservation of fish, game, mollusks, or crustaceans and all fines and forfeitures imposed by any court for the violation of any such law shall be used and expended exclusively for the protection, conservation, propagation and preservation of fish, game, mollusks, or crustaceans and for the administration and enforcement of laws relating thereto. The Legislature may provide for the division of money derived from such fines and forfeitures."

At the time of its adoption in 1942, the provision's purpose was stated as follows:

"Senate Constitutional Amendment No. 1 is a very simple amendment. It simply freezes all moneys collected by the Fish and Game Commission from all sources into the Fish and Game Fund to be used solely by said commission for the propagation of fish and game for law enforcement in the protection of fish and game and all other matters pertaining to the lawful and legitimate expenses of the commission. It also provides that the Legislature may legislate for the division of moneys collected from fines and forfeitures in connection with law enforcement of the Fish and Game Code. The necessity of this amendment to the Constitution arises from the practice of the State in borrowing money from special funds and paying it back in a very unsatisfactory and uncertain manner." (Ballot Pamp., Gen. Elec. (Nov. 3, 1942), p. 13.)

We construe section 9 of article XVI of the Constitution "in accordance with the natural and ordinary meaning of its words." (See *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245.) The constitutional language does not allow the use of fish and game fines for activities other than the protection or propagation of fish and game. Neither expressly nor by necessary implication may other activities be funded by such fines.

---

[4]"The General Fund consists of money received into the treasury and not required by law to be credited to any other fund." (Gov. Code, § 16300.) "From these moneys all appropriations are paid which are not made payable out of any other especially named fund." (*Ingram* v. *Colgan* (1895) 106 Cal. 113, 118.) In short, General Fund deposits are available to pay any of the state's general expenses.

We have examined in detail the ballot pamphlet discussing section 9 of article XVI at the time it was adopted in 1974. (See *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization, supra,* 22 Cal.3d at 245-246 ["when . . . the enactment follows voter approval, the ballot summary and arguments and analysis presented to the electorate in connection with a particular measure may be helpful in determining the probable meaning of uncertain language"].) Although the term "exclusively" was removed from the constitutional mandate in 1974, no substantive change from the previous language or purpose was intended. (See Ballot Pamp., Gen. Elec. (Nov. 5, 1974), pp. 31-32 ["it makes only technical changes in the Constitution"].) We view the current constitutional language as requiring the expenditure of fish and game fines solely for fish and game protection or propagation activities. (See 66 Ops.Cal.Atty.Gen. 480, 484 (1983).)

While the constitutional directive may be traced back to 1942, as indicated, the language of section 13003 has its origin even earlier. (Stats. 1915, ch. 412; Stats. 1933, ch. 73.) This explains the seeming inconsistency between the statute ("unless otherwise provided by law . . .") and the mandate of the Constitution providing for *no* exceptions as to the use of fines from fish and game offenses. (See 20 Ops.Cal.Atty.Gen. 110, 112 (1952); Ops.Cal.Atty.Gen. No. N.S. 4579 (1942).)

In examining the specific issue of whether fish and game fines may be deposited in the state's General Fund, we first address the scope of the Legislature's law-making authority. In *Methodist Hosp. of Sacramento* v. *Saylor* (1971) 5 Cal.3d 685, 691, the Supreme Court reviewed the applicable principles:

". . . Unlike the federal Constitution, which is a grant of power to Congress, the California Constitution is a limitation or restriction on the powers of the Legislature. [Citations.] Two important consequences flow from this fact. First, the entire law-making authority of the state, except the people's right of initiative and referendum, is vested in the Legislature, and that body may exercise any and all legislative powers which are not expressly or by necessary implication denied to it by the Constitution. [Citations.] In other words, `we do not look to the Constitution to determine whether the Legislature is authorized to do an act, but only to see if it is prohibited." [Citation.]

"Secondly, all intendments favor the exercise of the Legislature's plenary authority: `If there is any doubt as to the Legislature's power to act in any given case, the doubt should be resolved in favor of the Legislature's action. Such restrictions and limitations [imposed by the Constitution] are to be construed strictly, and are not to be extended to include matters not covered by the language used.' [Citations.]"

In keeping with these principles, it is a cardinal rule of statutory construction that "[a] statute should be construed whenever possible so as to preserve its constitutionality. [Citations.]" (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.) "It is . . . settled that when the terms of a statute . . . may reasonably be construed to avoid conflict with a constitutional provision, they will be so read. [Citations.]" (*Building Material & Construction Teamsters' Union* v. *Farrell* (1986) 41 Cal.3d 651, 665.)

Here, we believe that Penal Code section 1463.001 may only be harmonized with the Constitution so long as the "75 percent transferred to the General Fund" is found inapplicable to fines for fish and game violations. A contrary construction of the statute would render it unconstitutional.

In 44 Ops.Cal.Atty.Gen. 8 (1964), we analyzed a similar situation. We concluded in our 1964 opinion that the state's Fish and Game Preservation Fund could be abolished but only if the moneys collected were "earmarked" in compliance with the constitutional mandate. We said:

"If the Fund were abolished, the moneys collected under laws relating to the protection, conservation, propagation or preservation of fish and game would have to be earmarked in whatever fund they were deposited for expenditure in keeping with the constitutional mandate." (*Id.* at p. 10.)

The state's General Fund, as previously noted, does not meet these conditions. (See Gov. Code, § 16372; *Willens* v. *Cory* (1975) 53 Cal.App.3d 104, 107-108; 62 Ops.Cal.Atty.Gen. 562, 566-567 (1979); 20 Ops.Cal.Atty.Gen. 259, 261-262 (1952); 7 Ops.Cal.Atty.Gen. 58, 59-60 (1946).) It is available to pay the state's general expenses. Deposit of fish and game fines into the state's General Fund would be inconsistent with the purpose of the constitutional mandate as expressed at the time it was adopted by the electorate. (Ballot Pamp., Gen. Elec. (Nov. 3, 1942), p. 13.)

Finally, in 52 Ops.Cal.Atty.Gen. 69 (1969), we examined the language of section 13003 in conjunction with Penal Code section 1203.1, requiring a county to deposit the fines collected by its probation department "into the county treasury and placed in the general fund." We concluded that the Penal Code provision was a general statute controlled by the more specific provisions of section 13003 when dealing exclusively with fish and game fines. We stated:

"A conflict exists between section 1203.1 of the Penal Code and the constitutional mandate executed through section 13003 of the Fish and Game Code. This is because there is no assurance that fish and game law violation fine money placed in the county general fund will be expended exclusively for fish and game conservation pursuant to the constitutional mandate. . . .

". . . In applying this rule [that a specific statute governs over a general statute] to section 1203.1 of the Penal Code and section 13003 of the Fish and Game Code, the specific particular statute, section 13003 of the Fish and Game Code, must prevail. This is especially true in light of the fact that there is no assurance that the constitutional provision which gave rise to section 13003 of the Fish and Game Code would be carried out if the fine moneys were deposited in the county general fund. The county general fund consists of money `not specially appropriated to any other fund.' Gov. Code § 29301. Each county has a special fund known as the County Fish and Game Propagation Fund (Fish & G. Code, § 13100) created for the purpose of carrying out the directive of section 22 of Article XIII of the California Constitution. Money deposited in the general fund is not money appropriated to the County Fish and Game Propagation Fund.

"We conclude that Sonoma County properly paid to the State Treasurer one-half of the fines collected for fish and game law violations pursuant to section 13003 of the Fish and Game Code. We further conclude that the one-half of the fines retained by the county should be deposited in the County Fish and Game Propagation Fund pursuant to section 13003 and 13100 of the Fish and Game Code even though they were collected procedurally under section 1203.1 of the Penal Code."

Similarly, in the present situation, Penal Code section 1463.001 must be governed by the more specific provisions of section 13003 in keeping with the constitutional mandate. The transfer of fish and game fines into the state's General Fund would not satisfy the Constitution, since such deposits would be available to pay the state's general expenses and would no longer be

available exclusively to fund fish and game activities.  While the latter activities *could* be funded from General Fund moneys,[5] such "a very unsatisfactory and uncertain" practice was what the constitutional mandate was intended to prevent.  (Ballot Pamp., Gen. Elec. (Nov. 3, 1942), p. 13.)

In answer to the question presented, therefore, we conclude that fines for deposit in a county's fish and wildlife propagation fund may not be transferred to the state's General Fund.

* * * * *

---

[5]Activities relating to the protection or propagation of fish and game that might be funded from money deposited in the state's General Fund include those of the Department of Fish and Game (§ 13004, subd. (b)), the Fish and Game Commission (§ 13004, subd. (c)), the California Tahoe Regional Planning Agency (Gov. Code, § 67100), the Sea Grant Program of the University of California (Pub. Resources Code, § 6217, subd. (d)), the California Tahoe Conservancy (Gov. Code, § 66907), the Department of Forestry and Fire Protection (Pub. Resources Code, §§ 713-714), the California Coastal Commission (Pub. Resources Code, § 30330), and the San Francisco Bay Conservation and Development Commission (Gov. Code, §§ 66630-66633).