[No. C061947. Third Dist. July 2, 2010.]

DAVID A. GILB, as Director, etc., et al., Plaintiffs and Respondents, v. JOHN CHIANG, as Controller, etc., et al., Defendants and Appellants; SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1000, etc., et al., Interveners and Appellants.

448

## Counsel

Kaye Scholer, Steven S. Rosenthal, Marc S. Cohen, Jay W. Waks, Bryant Delgadillo; Richard J. Chivaro, Ronald V. Placet and Shawn D. Silva for Defendants and Appellants.

Law Offices of Brooks Ellison and Patrick J. Whalen for Intervener and Appellant California Attorneys, Administrative Law Judges and Hearing Officers in State Employment.

Paul E. Harris III, Brooke D. Pierman; Olson Hagel & Fishburn, Deborah B. Caplan, N. Eugene Hill and Richard C. Miadich for Interveners and Appellants Service Employees International Union, Yvonne Walker, Pamela Handel, Tamekia Robinson and Kathleen Phillips.

Carroll, Burdick & McDonough, Gary M. Messing, Gregg McLean Adam and Jonathan Yank for Interveners and Appellants California Correctional Peace Officers Association and California Statewide Law Enforcement Association.

Daniel M. Lindsay for Intervener and Appellant California Correctional Peace Officers Association.

Kasey C. Clark for Intervener and Appellant California Statewide Law Enforcement Association.

K. William Curtis, Warren C. Stracener, Linda A. Mayhew and Christopher E. Thomas for Plaintiffs and Respondents.

## Opinion

**SIMS, J.**—The main issue in this appeal is whether California's Department of Personnel Administration (DPA) has authority to direct the State Controller temporarily to defer paying state employees' salaries (except for federally mandated minimum wages) when appropriations are unavailable due to the state Legislature's failure to enact a timely state budget. (Gov. Code, § 12440.)[1] Although DPA merely sought to implement a California Supreme Court decision (*White v. Davis* (2003) 30 Cal.4th 528 [133 Cal.Rptr.2d 648, 68 P.3d 74]), the controller disagrees with DPA's interpretation of the judicial opinion.

Plaintiffs DPA and its director David A. Gilb (collectively, DPA) sought declaratory and other relief against defendants State Controller John Chiang and the Office of State Controller (collectively, the Controller). Various state employee groups intervened in support of the Controller.[2]

Despite "technical mootness" of this lawsuit after the Legislature passed the budget for fiscal year 2008–2009, the trial court issued a declaratory judgment concluding DPA acted within its authority. The Controller and interveners appeal.

We shall conclude the trial court did not erroneously grant declaratory relief in a moot case. We shall also conclude the DPA has the authority to

---

[1] Undesignated statutory references are to the Government Code.

Section 12440 provides, "The Controller shall draw warrants on the Treasurer for the payment of money directed by law to be paid out of the State Treasury; but a warrant shall not be drawn unless authorized by law, and unless, except for refunds authorized by Section 13144, unexhausted specific appropriations provided by law are available to meet it."

[2] The Controller's appeal is supported by interveners/appellants who filed complaints in intervention: (1) California Attorneys, Administrative Law Judges, and Hearing Officers in State Employment (CASE), (2) Service Employees International Union, Local 1000 (SEIU Local 1000), and individual state employees Yvonne Walker, Pamela Handel, Tamekia Robinson and Kathleen Phillips, (3) California Statewide Law Enforcement Association (CSLEA), (4) California Correctional Peace Officers Association (CCPOA), (5) California Association of Professional Scientists (CAPS), and (6) Professional Engineers in California Government (PECG). The latter two filed a joinder in the Controller's appellate brief; the others filed appellate briefs. Another intervener, Stationary Engineers Local 39 International Union of Operating Engineers, AFL-CIO, did not file a notice of appeal.

direct the Controller to defer salary payments in excess of federally mandated minimum wages when appropriations for the salaries are lacking due to a budget impasse, because the Legislature created DPA to "manag[e] the nonmerit aspects of the state's personnel system" (§ 19815.2) and vested DPA with jurisdiction with respect to "the administration of salaries" and "other personnel-related matters" (§ 19816). If the Controller disagrees with the directive's specifics, the Controller may seek judicial resolution but may not simply disregard the DPA directive. We shall therefore affirm the judgment.

## LEGAL FRAMEWORK

■ Although the California Legislature is required to pass a budget bill by June 15 each year (Cal. Const., art. IV, § 12, subd. (c)(3)), timely passage has become the exception rather than the rule. (*White v. Davis, supra,* 30 Cal.4th at p. 533.) "Until the budget bill has been enacted, the Legislature shall not send to the Governor for consideration any bill appropriating funds for expenditure during the fiscal year for which the budget bill is to be enacted, except emergency bills recommended by the Governor or appropriations for the salaries and expenses of the Legislature." (Cal. Const., art. IV, § 12, subd. (c)(4).) An appropriation is a legislative act setting aside a certain sum of money for a specified object in such manner that the executive officers are authorized to use that money and no more for such specified purpose. (*White v. Davis, supra,* 30 Cal.4th at p. 538.) In some circumstances, the law authorizes "continuing appropriations" that run from year to year without the need for further authorization (*ibid.*), but the crux of this appeal is payment of salaries for which there are no appropriations during a budget impasse between July 1, the beginning of the state's fiscal year, and the date a tardy budget bill is enacted. (*White v. Davis, supra,* 30 Cal.4th at pp. 533, fn. 1, 567 [appropriations for most state employee salaries traditionally have been adopted as part of the annual budget act].)

■ Without an appropriation, the Controller cannot pay the state's bills, including state employee salaries. (Cal. Const., art. XVI, § 7 ["Money may be drawn from the Treasury only through an appropriation made by law and upon a Controller's duly drawn warrant."]; *White v. Davis, supra,* 30 Cal.4th at pp. 568–569.)

■ Although public employment is governed by statute (*White v. Davis, supra,* 30 Cal.4th at pp. 564–565), public employment gives rise to obligations protected by the state Constitution's contract clause, including the right to the payment of salary which has been earned. (*Kern v. City of Long Beach* (1947) 29 Cal.2d 848, 853 [179 P.2d 799].)

■ In *White v. Davis, supra,* 30 Cal.4th 528, which involved taxpayer suits to prevent the Controller from paying state employees during a budget

impasse, the California Supreme Court held that, while state employees are *ultimately* entitled to receive their salaries under the contract clauses of the federal and state Constitutions, "because the California Constitution [(Cal. Const., art. XVI, § 7)] and the applicable statutes[3] establish that the Controller is not authorized actually to pay salaries to state employees in the absence of a duly enacted appropriation, that condition or qualification on the right to compensation necessarily comprises one term or condition of employment that is an integral part of a state worker's employment rights that are protected by the constitutional contract clause. Accordingly, . . . the state constitutional contract provision does not afford state employees the right to obtain the actual payment of salary from the treasury prior to the enactment of an applicable appropriation." (*White v. Davis, supra,* 30 Cal.4th at pp. 535, 571, 568–569.) Nevertheless, said the state Supreme Court, under the federal supremacy clause (U.S. Const., art. VI, § 2), the state is obligated during a budget impasse to comply with the Fair Labor Standards Act of 1938 or FLSA (29 U.S.C. § 201 et seq.), which generally applies to state employees (29 U.S.C. § 203(d), (e)(2)(C), (x)), and requires the state timely to pay the federally mandated minimum wage rate to nonexempt[4] employees who do not work overtime and timely to pay full salary plus overtime to nonexempt employees who do work overtime.[5] (*White v. Davis, supra,* 30 Cal.4th at pp. 574–579.)

## FACTUAL AND PROCEDURAL BACKGROUND

For fiscal year (FY) 2008–2009, the Legislature again failed to meet the June 15 constitutional deadline to pass a budget, and the state's budget expired on June 30, 2008.

---

[3] For example, section 12440 provides, "The Controller shall draw warrants on the Treasurer for the payment of money directed by law to be paid out of the State Treasury; but a warrant shall not be drawn unless authorized by law, and unless, except for [specified] refunds . . . , unexhausted specific appropriations provided by law are available to meet it." Section 9610 provides, "The fixing or authorizing the fixing of the salary of a State officer or employee by statute is not intended to and does not constitute an appropriation of money for the payment of the salary. The salary shall be paid only in the event that moneys are made available therefor by another provision of law." Section 1231 says no state employee shall be deemed to have incurred a break in service or a change in salary "solely because of the failure to enact a budget act for a fiscal year prior to the beginning of that fiscal year." Section 1231.1 says, "Funds from each appropriation made in the budget act for any fiscal year may be expended to pay to officers and employees whatever salary that would have otherwise been received had the budget act been adopted on or prior to July 1 of that fiscal year."

[4] Some state workers are exempt from civil service, including some officers and employees of the Legislature, the courts, the Governor's office, and the University of California. (Cal. Const., art. VII, § 4.)

[5] Full payment is required for overtime workers (29 C.F.R. § 778.315 (2009)) because otherwise an employer could effectively eliminate the premium paid for overtime by reducing straight time wages. (*White v. Davis, supra,* 30 Cal.4th at pp. 577–578.)

On July 31, 2008, Governor Schwarzenegger issued an executive order for DPA and the Department of Finance (DOF) to work with the Controller to develop and implement necessary mechanisms, including pay letters[6] and computer programs, to comply with the California Supreme Court's *White v. Davis* opinion. The Controller declared his intent to disregard the order and to continue to provide full pay to all state employees, using cash on hand or borrowing money.

On August 5, 2008, DPA issued "Pay Letter 08-23," instructing the Controller to reduce the paychecks of state employees pending the adoption of a budget, as follows: (1) Pay all nonexempt state employees in a specific "workweek group" (§ 19843) the federal minimum wage (except specified departments expected to need overtime work for critical services); (2) Pay all executive, administrative, and professional (EAP) employees (Workweek group E), except those covered by specified federal regulations, the minimum salary required by FLSA to preserve the EAP exemption; and (3) Pay no salary to employees not covered by FLSA and employees covered by specified regulations.

On August 7, 2008, DPA proposed two additional options for implementing the general direction of Pay Letter 08-23 and asked the Controller to respond. On August 11, 2008, the Controller responded he needed more time and needed help from DPA in resolving various logistical and legal issues, e.g., (1) how to adjust for tax withholdings and other deductions when salary payments are split, and (2) development and modification of new and existing computer programs.

On August 11, 2008, DPA filed a "PETITION FOR WRIT OF MANDATE (CCP § 1085); COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF," alleging the Controller intended to continue to pay state employees in violation of the California Constitution, various statutes, *White v. Davis* and DPA's pay letter.[7] DPA asked for mandamus and injunctive relief to compel the Controller to comply with the pay letter. DPA also asked for declaratory relief, for the trial court to declare the Controller is legally

---

[6] We find no reference to "pay letter" in the statutes or regulations. According to a declaration from DPA's personnel program manager, a pay letter is the historical administrative document issued by DPA, often with the Controller's input, to provide the Controller with "notice and instructions concerning the implementation of any changes to the salary of classifications and the impact on employee compensation, thus triggering the Controller's duty to perform his ministerial duties regarding the payment of employee salaries." Pay Letter 08-23 did not change salaries but merely delayed payment. Since Pay Letter 08-23 is moot, we need not address whether a pay letter was the appropriate vehicle for DPA to convey its decision.

[7] The Controller does not claim the lawsuit, which was filed the same day he said he needed more time, was premature.

required under state law to refrain from paying state employee salaries in the absence of a budget or other available appropriation, except as minimally required by FLSA. The pleading alleged: "An actual controversy has arisen and now exists between [the parties] concerning their respective rights and obligations under the California Supreme Court decision of *White v. Davis*. . . . [DPA] contend[s] that the Controller violates state law by paying state employees' salaries in the absence of a budget or other available appropriation, except as minimally required by federal law. [DPA is] informed and believe[s] that Respondents/Defendants dispute these contentions."

Employee unions and individual employees intervened in support of the Controller (see fn. 2, *ante*) and removed the case to federal court. After the state Legislature finally passed the budget in September 2008, the federal court remanded the matter to state court.

Without amending its pleading, DPA filed an amended memorandum asking the state court to order the Controller "to make any and all necessary adjustments to the state payroll system so the Controller will be prepared to comply with the law during the next budget impasse."

The Controller filed an opposition arguing (1) the case was moot, (2) DPA lacked authority over the Controller in this context, (3) the undisputed evidence showed that deficiencies in the current payroll systems made it impossible or unfeasible for the Controller to do as DPA asked, and (4) DPA's pay letter "may run afoul" of the FLSA by calling for payment of the *federal* minimum wage ($6.55 per hour), whereas the FLSA states it does not excuse noncompliance with a higher minimum wage established by a state. (29 U.S.C. § 218(a);[8] 29 C.F.R. § 541.4 (2009).)[9] The Controller asserted a pending upgrade of the payroll system (the "21st Century Project"

---

[8] Title 29 of the United States Code (title 29 U.S.C.) section 218(a), provides: "No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter . . . . No provision of this chapter shall justify any employer in reducing a wage paid by him which is in excess of the applicable minimum wage under this chapter . . . ."

[9] Title 29 of the Code of Federal Regulations (title 29 C.F.R.) section 541.4 (2009), states: "The [FLSA] provides minimum standards that may be exceeded, but cannot be waived or reduced. Employers must comply, for example, with any Federal, State or municipal laws, regulations or ordinances establishing a higher minimum wage . . . than [that] established under the Act. Similarly, employers, on their own initiative or under a collective bargaining agreement with a labor union, are not precluded by the Act from providing a wage higher than the statutory minimum . . . than provided by the Act. While collective bargaining agreements cannot waive or reduce the Act's protections, nothing in the Act or the regulations in this part *relieves employers from their contractual obligations under collective bargaining agreements.*"

mandated by § 12432)[10] had stalled and in any event would not solve the difficulties in complying with the pay letter. Intervener CASE (see fn. 2, *ante*) filed an opposition, arguing (1) the pay letter failed to differentiate between the general fund and special funds subject to continuing appropriations, and (2) requiring employees to work without pay impaired constitutional rights under the state and federal contract clauses.

DPA replied in part that (1) the Controller did not declare impossibility but only unfeasibility; (2) the law does not recognize an unfeasibility defense; and (3) the Controller did not show adequate efforts to comply with the pay letter.

A hearing was held on documentary evidence and oral argument. The Controller's counsel pointed to his evidence of unfeasibility (affidavits) and said, "We are not trying at this point to try to adjudicate the merits of it. The question really is: Is it a valid claim that requires adjudication?" The Controller asked to "go forward with the infeasibility defense" and said, "what we are asking Your Honor is to reconsider [the tentative ruling that unfeasibility as opposed to impossibility was not a defense] and either make a determination on our feasibility or if fact finding is required, make the requisite fact finding."

On March 18, 2009, the trial court issued a written ruling resolving substantive issues despite technical mootness of the case. The court concluded (1) DPA had authority and standing such that the Controller was legally obligated to comply with the pay letter; (2) the DPA's instructions were legally correct; (3) the defense of impossibility incorporates unfeasibility due to extreme difficulty or expense; (4) the Controller failed to make a sufficient showing of impossibility; and (5) even if the *current* payroll system was deficient, the Controller failed to show that a sufficient fix was impossible before the next budget impasse. Regarding CASE's opposition, the trial court agreed its ruling must be limited to state employees whose salaries are not subject to continuing appropriations or self-executing constitutional mandates.

The trial court rejected the Controller's argument that the FLSA mandated *state* minimum wages where states set wages higher than the *federal* minimum. The cited authorities did not "federalize" state minimum wage laws but

---

[10] Section 12432, enacted in 2004 (Stats. 2004, ch. 227, § 38), provides in part, "(a) The Legislature hereby finds and declares that it is essential for the state to replace the current automated human resource/payroll systems operated by the Controller to ensure that state employees continue to be paid accurately and on time and that the state may take advantage of new capabilities and improved business practices. To achieve this replacement of the current systems, the Controller is authorized to procure, modify, and implement a new human resource management system that meets the needs of a modern state government. This replacement effort is known as the 21st Century Project."

merely established that the FLSA did not *preempt* state minimum wage laws. The court declined to address other FLSA claims, which could not be determined in the abstract.

On April 13, 2009, the trial court issued a formal judgment stating an attached copy of its written ruling explained the court's reasoning and:

"1. The Court hereby declares that the Controller must follow the decisions of the [DPA] so long as DPA is acting within the fundamental authority delegated to it by the Legislature;

"2. The Court hereby declares that DPA's Pay Letter was within its fundamental authority;

"3. The Court hereby declares that the Controller is legally prohibited from paying state employees in the absence of a budget or other available appropriation, except as minimally required by [FLSA];

"4. The Court hereby declares that DPA's Pay Letter does not on its face violate FLSA;

"5. Petitioners' request for injunctive and mandamus relief shall be denied."

The Controller and interveners (see fn. 2, *ante*) appeal.

## DISCUSSION

### I. *Standard of Review*

To the extent declaratory relief involves a threshold issue of justiciability or statutory interpretation of Code of Civil Procedure section 1060,[11] which authorizes declaratory relief actions "in cases of actual controversy," such issues present questions of law subject to de novo review. (*Environmental Defense Project of Sierra County v. County of Sierra* (2008) 158 Cal.App.4th 877, 885 [70 Cal.Rptr.3d 474] (*Environmental Defense*).)

[11] Code of Civil Procedure section 1060 provides in part: "Any person . . . who desires a declaration of his or her rights or duties with respect to another . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action . . . for a declaration of his or her rights and duties . . . . He or she may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time. The declaration may be either affirmative or negative in form and effect, and the declaration shall have the force of a final judgment. The declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought."

If an actual controversy exists, it is within the trial court's discretion to grant or deny declaratory relief (Code Civ. Proc., § 1061 [court may refuse relief where declaration "is not necessary or proper at the time under all the circumstances"]), and we will not disturb that exercise of discretion absent abuse. (*Environmental Defense, supra*, 158 Cal.App.4th at p. 885.)

## II. *Mootness*

The Controller argues the trial court improperly granted declaratory relief, because the "actual controversy" (Code Civ. Proc., § 1060; see fn. 11, *ante*) was rendered moot when the Legislature passed the budget. We see no basis for reversal.

We first observe the judgment declares five points: (1) the Controller must comply with DPA decisions within DPA's jurisdiction; (2) Pay Letter 08-23 was within DPA's jurisdiction; (3) the Controller must comply with *White v. Davis* (i.e., he is prohibited from paying state employees in the absence of a budget or other available appropriation, except as minimally required by the FLSA); (4) Pay Letter 08-23 does not "on its face" violate FLSA; and (5) DPA gets no injunctive or mandamus relief (due to mootness).

No one challenges the fifth point. We shall explain the first two points are not moot, but even if they were, we would still address them under the exception for issues of public interest likely to recur yet escape review. The third point, that the Controller must comply with a California Supreme Court opinion, is an idle and superfluous declaration, but it does not prejudice the Controller and does not require reversal. The fourth point, that the pay letter does not "on its face" violate FLSA, is moot, but, under the mootness exception for public interest issues, we shall address the argument that the FLSA would mandate timely payment of the *state* minimum wage rather than the *federal* minimum wage.

■ Thus, "[a]n action for declaratory relief lies when the parties are in fundamental disagreement over the construction of particular legislation, or they dispute whether a public entity has engaged in conduct or established policies in violation of applicable law. [Citations.]" (*Alameda County Land Use Assn. v. City of Hayward* (1995) 38 Cal.App.4th 1716, 1723 [45 Cal.Rptr.2d 752] (*Alameda*).) In *Alameda*, landowners challenged a memorandum of understanding (MOU) between public entities concerning land, though no controversy yet existed over any specific application of the MOU. (*Id.* at p. 1723.) *Alameda* rejected defense claims that the case was not ripe, concluding the complaint alleged a controversy concerning the abnegation of

the public entities' individual powers. (*Ibid.*) The complaint alleged that, by executing the MOU, the public entities had impaired the future exercise of their own legislative authority to amend their general plans. (*Ibid.*)

■ An "actual controversy" under the declaratory relief statute is "one which admits of definitive and conclusive relief by judgment within the field of judicial administration, as distinguished from an advisory opinion upon a particular or hypothetical state of facts." (*Selby Realty Co. v. City of San Buenaventura* (1973) 10 Cal.3d 110, 117 [109 Cal.Rptr. 799, 514 P.2d 111].)

■ "Unlike coercive relief . . . in which a party is ordered by the court to do or to refrain from doing something, a declaratory judgment merely declares the legal relationship between the parties. Under the provisions of the Act, a declaratory judgment action may be brought to establish rights once a conflict has arisen, or a party may request declaratory relief as a prophylactic measure before a breach occurs." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 898 [123 Cal.Rptr.2d 432, 51 P.3d 297] (*Mycogen*); accord, *Westly v. Board of Administration* (2003) 105 Cal.App.4th 1095 [130 Cal.Rptr.2d 149] [Controller had standing to pursue declaratory relief action challenging authority of California Public Employees' Retirement System (CalPERS) to exempt its portfolio managers from civil service provisions].)

■ "Like the doctrine of res judicata, declaratory relief promotes judicial economy. A declaratory judgment action provides parties with an efficient means of adjudicating a disputed issue. . . . [¶] While declaratory judgments are issue preclusive, they are not necessarily claim preclusive. The [declaratory judgment] Act provides an exemption from the bar of res judicata for [purely] declaratory judgments, stating: 'The remedies provided by this chapter are cumulative, and shall not be construed as restricting any remedy, provisional or otherwise, provided by law for the benefit of any party to such action, and no judgment under this chapter shall preclude any party from obtaining additional relief based upon the same facts.' " (*Mycogen, supra*, 28 Cal.4th at p. 898.)

Here, DPA's pleading alleges an actual controversy in that DPA "contend[s] that the Controller violates state law by paying state employees' salaries in the absence of a budget or other available appropriation, except as minimally required by federal law. [DPA is] informed and believe[s] that [the Controller] dispute[s] these contentions." Even though the 2008–2009 budget impasse ended, DPA is entitled to declaratory relief as a prophylactic measure on the question of DPA's authority to issue directions to the Controller on this subject.

Thus, we conclude the judgment's first two declarations—that DPA has authority over the Controller in this regard and that the pay letter was within its authority—are not moot.

■ Even if they were moot, we would decide them under the mootness exception for public interest issues. Thus, " ' "[i]f a pending case poses an issue of broad public interest that is likely to recur, the court may exercise an inherent discretion to resolve that issue even though an event occurring during its pendency would normally render the matter moot." ' " (*Edelstein v. City and County of San Francisco* (2002) 29 Cal.4th 164, 172 [126 Cal.Rptr.2d 727, 56 P.3d 1029] [Supreme Court reviewed judgment in declaratory relief action challenging city prohibition of write-in votes in mayoral runoff election, even though election had already occurred and prohibition was affected by subsequent amendment to city charter].) The Supreme Court noted it frequently exercised discretion to resolve constitutional issues about election laws raised by candidates in elections that were held before a decision could be reached. (*Ibid.*) *Edelstein* thus applied to a declaratory relief action the familiar rule that a court may decide a moot case where the issue is one of public interest capable of repetition yet likely to evade review. (*Ibid.*)

*White v. Davis, supra*, 30 Cal.4th 528, itself resolved the technically moot question of salary payments during a budget impasse after the impasse was over. Even though no party claimed mootness, the Supreme Court said, "we conclude it is appropriate to address the state employee salary issue that has been briefed in this court, in order to provide guidance to the Controller and other public officials in the event of a future budget impasse." (*Id.* at p. 563.)

In another declaratory relief action, this court found an actual controversy entitled an environmental group to affirmance of a declaratory judgment that a county's zoning process violated state zoning laws, even though the parties had resolved their dispute about the particular project that was the subject of the lawsuit before the judgment. (*Environmental Defense, supra*, 158 Cal.App.4th at pp. 884–888.) "There was and is an 'actual controversy' between the parties as to whether [the county's process violated state law] given their different interpretations of the [statutes]. Moreover, the county has made it clear that it will continue [its practice] in the future. [Citations.]" (*Id.* at p. 886.)

Here, legislative gridlock makes it reasonable to expect that budget impasses will continue in the future, and the Controller has made it clear he intends to disregard any similar pay letter in the event of a future budget impasse.

Accordingly, we shall address the parties' contentions as to DPA's authority over the Controller in the context of state employee salary payments in the absence of appropriations during a budget impasse.

As to the judgment's third declaration, requiring the Controller to follow the law, the Controller claims the judgment orders him to take unspecified actions to prepare for the possibility of an extended budget impasse in the future. However, the Controller appears to refer to the written "Ruling After Hearing" incorporated in the judgment rather than the judgment itself. The judgment says the ruling is attached to explain the trial court's reasoning. We generally review the judgment rather than the trial court's reasoning. (*Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].) The declaratory judgment itself makes no declaration ordering any unspecified preparatory action. The judgment, by prohibiting the Controller "from paying state employees in the absence of a budget or other available appropriation, except as minimally required by [the FLSA]," merely restates the *White v. Davis* holding. This declaration was unnecessary, because it is "an idle and superfluous act for the trial court to issue a declaratory judgment that merely restates the holding of [a published appellate court opinion]." (*Connerly v. Schwarzenegger* (2007) 146 Cal.App.4th 739, 747 [53 Cal.Rptr.3d 203] [no justiciable controversy remained after appellate court in unrelated case invalidated the statute which plaintiff complained the defendants might try to enforce].) Indeed, the Controller's appellate brief concedes that "where the Superior Court declares that 'the Controller is legally prohibited from paying state employees in the absence of a budget or other available appropriation, except as minimally required by the FLSA,' [citation to record], the Court has stated a general proposition of law with which no party disagrees as a general matter and which provides no concrete guidance for the future." Though the declaration was unnecessary, it does not prejudice the Controller, and therefore reversal is not required. (Cal. Const., art. VI, § 13 [no judgment shall be set aside unless it would result in a miscarriage of justice]; Code Civ. Proc., § 475 [no judgment shall be reversed unless error is prejudicial].)

The declaration that the Controller follow the law does not preclude the parties from disputing the meaning or application of *White v. Davis* in connection with any future pay letter. We thus need not address the parties' dispute about the meaning or application of *White v. Davis*, including intervener CASE's suggestion that *White v. Davis* was wrongly decided because no one there brought to the court's attention section 19824,[12] which

---

[12] Section 19824 states, "(a) Unless otherwise provided by law, the salaries of state officers shall be paid monthly out of the General Fund. [¶] (b) If the provisions of this section are in conflict with the provisions of a memorandum of understanding reached pursuant to Section 3517.5, the memorandum of understanding shall be controlling without further legislative action, except that if such provisions of a memorandum of understanding require the

assertedly authorizes payment of employee salaries in the event of a budget impasse.[13]

As to the fourth declaration, that Pay Letter 08-23 does not "on its face" violate the FLSA, the point is moot, because Pay Letter 08-23 became moot when the Legislature passed the 2008–2009 budget. Nevertheless, we shall address, *post*, the Controller's contention that the prompt FLSA-mandated payments must be the higher *state* minimum wage rather than the *federal* minimum wage.

As indicated, no one challenges the fifth declaration, denying as moot the claims for mandamus and injunctive relief.

Although the judgment contains no declaration on the issue, the Controller challenges the trial court's rejection of his claim that it would be technologically impossible/unfeasible to do what the DPA asked. We question the Controller's claim that the trial court should not have ruled on this defense without a full evidentiary hearing, as he requested. The Controller did not ask to call witnesses or submit any further evidence in the trial court. In any event, even assuming for the sake of argument that he submitted sufficient evidence of unfeasibility, reversal of the judgment would not be warranted, because nothing in the judgment reflects any prejudice from an erroneous evidentiary ruling on feasibility. While unfeasibility would arguably excuse the Controller from the declaratory judgment to comply with *White v. Davis*, we have explained that aspect of the judgment was superfluous. We decline to consider the feasibility issue, because it involves variables that may or may not recur in the future, depending on the content of any future pay letter by DPA, and the state of the evidence in any future litigation. We will not speculate as to the future capabilities of the payroll system that will be in place at the time of future budget impasses. We recognize the Controller's payroll chief attested that a pending upgrade (the 21st Century Project) will not solve the problems that make unfeasible compliance with DPA's interpretation of *White v. Davis*. However, that does not necessarily excuse or

expenditure of funds, the provisions shall not become effective unless approved by the Legislature in the annual Budget Act."

[13] We observe, however, that even if "officers" in section 19824 could be read to include all employees, CASE's cited authority, *Meyer v. Riley* (1934) 2 Cal.2d 39 [38 P.2d 405], is not dispositive. There, the Controller refused to pay the salary of a DOF chief appointed by the Governor, in part because the budget bill expressly stated that " 'no money hereby appropriated shall be used for salary and expenses' " of that chief. (*Id.* at p. 41.) The Supreme Court said the officer, having performed the job, was entitled to be paid, and such payment could come from the general fund under section 19824's predecessor statute, which said, " 'Unless otherwise provided by law, the salaries of officers must be paid out of the general fund in the state treasury . . . .' " (*Meyer v. Riley, supra,* 2 Cal.2d at p. 41.) This says nothing about employees for whom appropriations *are* otherwise provided by law but are delayed by budget gridlock.

preclude the Controller from implementing other changes to make compliance feasible. We decline to address the argument raised for the first time in the Controller's reply brief, that DPA and the court must accept the Controller's feasibility determination unless DPA proves bad faith or a total lack of evidence. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn. 10 [66 Cal.Rptr.2d 319, 940 P.2d 906] [reviewing court may disregard new point raised for first time in reply brief].)

To summarize, we reject the Controller's request to reverse the judgment as moot.

### III. *DPA's Authority over the Controller*

The Controller argues the DPA does not have express statutory authority to tell the Controller to delay paying salaries. However, " '[p]ublic agencies possess not only expressly granted powers but also such implied powers as are necessary or reasonably appropriate to the accomplishment of their express powers.' " (*Cox v. Kern County Civil Service Com.* (1984) 156 Cal.App.3d 867, 871–876 [203 Cal.Rptr. 94] [county civil service commission had implied power to invalidate promotional eligibility list for good cause].) The Controller fails to persuade us that express authority is required, and we shall conclude DPA acted within the scope of its broad authority to manage the nonmerit aspects of the state's personnel system.

Moreover, the DPA's pay letter merely sought to implement the California Supreme Court opinion in *White v. Davis*. Even without a directive from DPA, the Controller would be required to comply with the California Supreme Court opinion. The Controller says that, because he has an independent duty to review the legality of claims or warrants drawn against the State Treasury, he has authority to conclude that DPA's interpretation of *White v. Davis* would violate the FLSA (by paying employees the federal minimum wage instead of the state's higher minimum wage). However, we shall explain the Controller's independent duty to audit claims does not authorize him to disregard DPA's directive. If the Controller believed DPA's pay letter violated the law, the Controller should have initiated judicial resolution of the dispute rather than simply disregarding the pay letter.

We find guidance in *Tirapelle v. Davis* (1993) 20 Cal.App.4th 1317 [26 Cal.Rptr.2d 666] (*Tirapelle*), where this court affirmed mandamus directing the Controller to comply with a DPA decision to reduce salaries for state employees not entitled to engage in collective bargaining. *Tirapelle* is not precisely on point, because it involved the setting of salaries, whereas the instant case involves delaying payment. Yet *Tirapelle* is helpful here.

 *Tirapelle* held the Controller is not free to engage in a blanket, across-the-board refusal to follow DPA decisions. (*Tirapelle, supra*, 20 Cal.App.4th at p. 1341.) "The Controller is a state constitutional officer who is elected at the same time and places and for the same term as the Governor. (Cal. Const., art. V, § 11.) The Constitution provides: 'Money may be drawn from the Treasury only through an appropriation made by law and upon a Controller's duly drawn warrant.' (Cal. Const., art. XVI, § 7.) With respect to the Controller, as with other officers, the Constitution follows a minimalist approach, that is, it provides for the office but primarily leaves it to the Legislature to define the duties and functions of the Controller. [Citations.] The Legislature has wide discretion in defining the duties and functions of the office. [Citations.] [Fn. omitted.]" (*Tirapelle, supra*, 20 Cal.App.4th at p. 1327.)

 *Tirapelle* noted section 12410 provides, " '[t]he Controller shall superintend the fiscal concerns of the state. The Controller shall audit all claims against the state, and may audit the disbursement of any state money, for correctness, legality, and for sufficient provisions of law for payment . . . .' " (*Tirapelle, supra*, 20 Cal.App.4th at pp. 1327–1328.) Section 12440 (see fn. 1, *ante*) authorizes the Controller to draw warrants on the treasurer if they are authorized by law and "unexhausted specific appropriations provided by law are available to meet" them. The Controller may not draw a warrant for any claim until it has been audited or is expressly exempt from audit. (§ 925.6.)

 The Controller's basic duty to audit claims for correctness, legality, and for sufficient provisions of law for payment (§ 12410) may encompass both ministerial and discretionary action. (*Tirapelle, supra*, 20 Cal.App.4th at p. 1328.) "The Controller's discretionary or factfinding powers generally involve the determination of the factual circumstances necessary to establish the validity of particular claims. . . . [¶] The Controller's authority is generally said to be ministerial when the amount of an expenditure is set by law or entrusted to the discretion of another agency or branch of government." (*Id.* at p. 1329.) "Although in some circumstances the Controller may have discretionary duties, '. . . the greater part of the duties devolved upon him by the law are of a ministerial character. . . . His duties are enumerated and defined by the law, and they are, as we have said, generally of a purely ministerial character. He has no discretion as to the issuance of warrants for appropriations for the public service.' "[14] (20 Cal.App.4th at p. 1330.)

---

[14] Though not cited by *Tirapelle* or the parties to this appeal, section 1153 provides in part that the "[c]ontroller shall provide for the administration of payroll deductions" pursuant to specified statutes, at the request of the person or organization authorized to have the deduction, subject to qualifications such as administrative feasibility.

■ As to the DPA, "[t]he Legislature created the DPA in 1981 for the purpose of [']managing the nonmerit aspects of the state's personnel system.['] (§ 19815.2, Stats. 1981, ch. 230, § 55, p. 1169.) The DPA succeeded to certain powers and duties formerly exercised by the State Personnel Board, the State Board of Control, the Department of General Services, and the Department of Finance. (§ 19816.) In general, the DPA has jurisdiction over the state's financial relationship with its employees, including matters of salary, layoffs and nondisciplinary demotions. (§§ 19816,[15] 19816.2,[16] 19825 [fn. 17, *post*], 19826 [fn. 18, *post*].)" (*Tirapelle, supra*, 20 Cal.App.4th at p. 1322, fn. omitted.) The DPA, unlike the State Personnel Board, is not a constitutional agency. (*Id.* at p. 1322, fn. 8.)

■ The Legislature imposed on DPA's director the duties to "[a]dminister and enforce the laws pertaining to personnel." (§ 19815.4, subd. (b).) The Legislature gave DPA "jurisdiction . . . with respect to the administration of salaries, hours, and other personnel-related matters . . . ." (§ 19816, subd. (a); see fn. 15, *ante*.) *Tirapelle* concluded that, in general, "DPA has discretionary authority over the salaries of civil service exempt employees and the Controller is not free to engage in a blanket, across-the-board refusal to follow DPA decisions." (*Tirapelle, supra*, 20 Cal.App.4th at p. 1341.)

■ *Tirapelle* involved "an announced intent of the Controller to issue warrants for the payment of sums in excess of the amounts approved by the state agency with primary jurisdiction over the subject matter of the claims." (*Tirapelle, supra*, 20 Cal.App.4th at p. 1331.) "While the Controller disagrees with the DPA's decision to reduce salary levels, he does not point to any provision of law which would authorize payment of salaries at the prior higher levels pending resolution of disputes over the reductions. The Controller may not draw a warrant upon the Treasury except as directed by law. (§ 12440; [citations].) With respect to the compensation of state employees the Legislature has not seen fit to delegate to the Controller any

---

[15] Section 19816, says the DPA "succeeds to and is vested with the duties, purposes, responsibilities, and jurisdiction exercised by the State Personnel Board with respect to the administration of salaries, hours, and other personnel-related matters, training, performance evaluations, and layoffs and grievances," is vested with the duties and jurisdiction of the Department of General Services and a victim compensation board with respect to the administration of employee entitlements, and is vested with the duties and jurisdiction of DOF "with respect to the administration of salaries of employees exempt from civil service and within range salary adjustments."

[16] Section 19816.2 states, "Notwithstanding any other provision of this part, regulations and other provisions pertaining to the layoff or demotion in lieu of layoff of civil service employees that are established or agreed to by the [DPA] shall be subject to review by the State Personnel Board for consistency with merit employment principles as provided for by Article VII of the California Constitution."

supervisory or review powers over the decisions of the DPA. (§§ 19825,[17] 19826.[18]) The Controller has the power to audit salary claims, but this is far from being authorized to fix compensation. [Citation.] Although disputes over salary levels inevitably arise [citations], the Legislature has not provided that the decisions of the DPA should be held in abeyance nor has it authorized the Controller to fix salary levels pending resolution of such disputes." (*Tirapelle, supra*, 20 Cal.App.4th at p. 1332, fn. omitted.) ▮ "Since the Controller has not been given powers of supervision over the DPA nor the power to review its decisions, the extent of his authority to disregard orders of the DPA in the performance of his audit function is limited by fundamental principles of jurisdiction. Jurisdictional concepts are most fully developed in the judicial sphere. There, a distinction is recognized between acts by a tribunal that lacks jurisdiction over the subject matter and acts within the tribunal's fundamental jurisdiction that are merely erroneous, although often referred to as acts in excess of jurisdiction. [Citations.] Erroneous decisions by a tribunal with fundamental jurisdiction over the issue must be challenged in the normal course of judicial review; such decisions may not be collaterally attacked and may not be ignored. [Citation.]" (*Tirapelle, supra*, 20 Cal.App.4th at p. 1333.) This concept applies to administrative agencies and executive officers. (*Ibid.*)

▮ *Tirapelle* said, "the Controller's duty to audit claims against the Treasury includes the duty to ensure that expenditures are authorized by law, but does not include the power to review and approve or reject decisions

---

[17] Section 19825 states in part, "Notwithstanding any other provision of law, whenever any state agency is authorized by special or general statute to fix the salary or compensation of an employee or officer, which salary is payable in whole or in part out of state funds, the salary is subject only to the approval of the [DPA] before it becomes effective and payable, except as provided in subdivision (b). The Legislature may expressly provide that approval of the [DPA] is not required. [¶] (b) [Where state court or other judicial agency is authorized to fix salary of employee or officer exempt from civil service, the salary is subject to Judicial Council approval]."

[18] Section 19826 provides, "(a) The [DPA] shall establish and adjust salary ranges for each class of position in the state civil service subject to any merit limits contained in Article VII of the California Constitution. . . . The [DPA] shall make no adjustments that require expenditures in excess of existing appropriations that may be used for salary increase purposes. The [DPA] may make a change in salary range retroactive to the date of application of this change.

"(b) Notwithstanding any other provision of law, the [DPA] shall not establish, adjust, or recommend a salary range for any employees in an appropriate unit where an employee organization has been chosen as the exclusive representative pursuant to Section 3520.5. [¶] (c) [Before expiration of MOU, DPA shall submit to the parties and the Legislature a report of comparable salaries.] [¶] (d) If the provisions of this section are in conflict with [an MOU] . . . , the [MOU] shall be controlling without further legislative action, except that if the provisions of a[n MOU] require the expenditure of funds, the provisions shall not become effective unless approved by the Legislature in the annual Budget Act."

of a department vested by the Legislature with authority over expenditures. [Fn. omitted.] Where a department or agency acts within the authority delegated to it by the Legislature, the Controller must defer to the agency or department. and leave review of the decision to the courts and/or the Legislature." (*Tirapelle, supra*, 20 Cal.App.4th at p. 1335.) "The authority to review decisions of the executive is inherently judicial and the Legislature may not delegate the complete power of review to an executive officer. [Citation.] However, we have no doubt that if the Legislature chose to do so it could make the decisions of the DPA subject to the approval of the Controller, or it could invest the Controller with quasi-judicial powers of review, subject to final review in the courts. [Citations.] The Legislature has not chosen to do so." (*Id.* at p. 1335, fn. 23.)

Here, the Controller argues *Tirapelle* is distinguishable because DPA had express statutory authority in that case. However, this detail did not form the basis for the *Tirapelle* decision. Here, DPA acted within the authority delegated to it by the Legislature in section 19815.2 (to "manag[e] the nonmerit aspects of the state's personnel system") and section 19816 (to "administ[er]" salaries and "other personnel-related matters"). To administer means "to manage or supervise the execution, use, or conduct" of something. (Merriam-Webster's Collegiate Dict. (11th ed. 2006) p. 16.) The Legislature delegated to DPA "jurisdiction over the state's financial relationship with its employees . . . ." (*Tirapelle, supra*, 20 Cal.App.4th at p. 1322.)

The Controller argues, "DPA in its regulations carefully and appropriately limits its 'administration of salaries' [under section 19816] to the determination of pay periods and the application of the established salary rates to various circumstances of employment." However, the cited regulations (Cal. Code Regs., tit. 2, §§ 599.665–599.713) address compensation and overtime but do not purport to limit DPA's statutory authority over "administration of salaries" (§ 19816).

The Controller argues *Tirapelle* was wrongly decided and in any event should not be read to require the Controller to take action he considers to be contrary to *federal* law. The Controller points out he has independent authority to audit claims and he, rather than DPA, has authority over the state's payroll systems under section 12470.[19] However, as stated in *Tirapelle*, the Controller's authority does not preclude him from also being subject to DPA decisions. The Controller cites *California Highway Com. v. Riley* (1923)

---

[19] Section 12470 says, "In conformity with the accounting system prescribed by the Department of Finance pursuant to Section 13300 [DOF shall devise, install, and supervise a modern and complete accounting system and policies for each state agency handling public money], the Controller shall install and operate a uniform state payroll system for all state agencies except the California Exposition and State Fair and the University of California. The

192 Cal. 97, 112 [218 P. 579] (*Cal. Highway*), where the state highway commission, board of control and DOF approved payment of expenses and a bonus to a contractor for agreeing in a second contract to cancel a construction contract for a different project when the highway commission decided the first project was not needed. The controller determined this was not a lawful purpose of state highway funds and refused to pay an unlawful gift of public monies. (*Id.* at p. 110.) The Supreme Court agreed the payment would be unlawful. (*Id.* at p. 111.) At the end of its opinion, the Supreme Court said the commission suggested the controller's authority to audit claims did not authorize him to question the validity of a payment because the State Highway Act required him to pay demands approved by the commission and control board. (192 Cal. at p. 112.) The Supreme Court questioned the suggestion but declined to resolve it, because the requested writ was discretionary and would not be granted where it would work an injustice or accomplish a legal wrong. (*Ibid.*) The court would not compel the controller to draw a warrant for an illegal claim. (*Ibid.*)

 Thus, the Supreme Court declined to address the point relied upon by the Controller in this appeal. Moreover, the cited case stands for the proposition that the Controller has authority to *refuse* to expend state money for unlawful claims. Here, it is the Controller who wants to expend state money in a manner that may be unlawful.

 The Controller claims a right to decide whether the pay letter violated FLSA, particularly because the Controller could be sued for violating FLSA, as he was in *Biggs v. Wilson* (9th Cir. 1993) 1 F.3d 1537 (along with the Governor, the State Treasurer, and the Director of Transportation). *Biggs* held late payment of wages during a budget impasse violated the FLSA—a holding taken into consideration by the Supreme Court in *White v. Davis, supra*, 30 Cal.4th at page 577. However, when the amount of an expenditure is set by law or entrusted to the discretion of another agency, the Controller's authority is ministerial only. (*Tirapelle, supra*, 20 Cal.App.4th at p. 1329.) Here, the expenditures at issue fell within DPA's authority.

The Controller also cites *Madden v. Riley* (1942) 53 Cal.App.2d 814 [128 P.2d 602], where this court said the approval, by the Governor and DOF, of travel expenses for a law enforcement officer to attend a convention in Reno did not preclude the Controller from examining the facts to ascertain whether the business of the convention in fact included duties incident to the officer's employment. (*Id.* at p. 820.) However, as explained in *Tirapelle, supra*, 20 Cal.App.4th at page 1329, *Madden v. Riley* involved the determination of the factual circumstances necessary to establish the validity of the

Controller may provide for the orderly inclusion of state agencies into the system, and may make exceptions from the operation thereof for such periods as he or she determines necessary."

claims. Here, it is undisputed that the employees' claims are valid. A delay in partial payment pursuant to *White v. Davis* would not call for the Controller to determine any factual circumstances.

The Controller and intervener SEIU, Local 1000, argue DPA's pay letter lacked authority because section 19826, subdivision (b) (see fn. 18, *ante*) prohibits DPA from adjusting salaries for "represented employees," i.e., state employees covered by the Dills Act (§ 3512 et seq.) who have chosen an exclusive representative which then has the exclusive right to represent the employees in negotiations with the state. (§§ 3515, 3515.5.) DPA responds its pay letter did not adjust salaries but merely deferred payment of some salaries. The Controller views DPA's response as some sort of concession requiring DPA to cite express statutory authority for its pay letter. We disagree.

The Controller and SEIU, Local 1000 suggest DPA's authority must be viewed as limited in the absence of express statutory authority to reduce salaries during a budget impasse, because section 19826, subdivision (b), was enacted to place the salaries of represented employees outside of the unilateral control of DPA. They cite this court's inapposite opinion in *Department of Personnel Administration v. Superior Court* (1992) 5 Cal.App.4th 155 [6 Cal.Rptr.2d 714] (*Greene*), which said the Legislature rather than the DPA has ultimate authority over wages where the Legislature expressly reserved that authority to itself, as the Legislature did with certain employees in the Dills Act (§ 3517.6).[20] *Greene* concluded DPA lacked authority to impose its last, best offer on wages after negotiating to impasse with state unions in recognized bargaining units. (*Greene, supra*, 5 Cal.App.4th at pp. 172, 174.) This court said section 19826, subdivision (b) (see fn. 18, *ante*), in declaring DPA " 'shall not establish, adjust, or recommend a salary range' " for represented employees under the Dills Act, unambiguously precluded DPA from implementing its final wage proposal when negotiations broke down. (*Greene, supra*, at p. 172.) *Greene* held that, if the DPA and state employee unions reach an impasse in collective bargaining regarding wages, the wage dispute returns to the Legislature for final determination pursuant to the Dills Act. (*Greene, supra*, at pp. 172–185.)

Here, DPA's pay letter did not purport to adjust salaries. Thus, section 19826 does not prohibit the DPA pay letter at issue here. And *Greene* did not, as appellants think, describe a general proposition that DPA's authority is

---

[20] Section 3517.6 provides that MOU's control in certain situations, but "[i]f any provision of the [MOU] requires the expenditure of funds, those provisions of the [MOU] may not become effective unless approved by the Legislature in the annual Budget Act." (§ 3517.6, subd. (b).)

limited, but rather limited DPA's authority when the Legislature had expressly reserved to itself authority over certain salary decisions. Pay Letter 08-23 did not conflict with any express reservation of legislative power over salary decisions.

We thus reject SEIU, Local 1000's overbroad extrapolation that *Greene* and *Tirapelle* confirm that DPA's authority is extremely limited, particularly over wage issues involving represented employees.

■ Intervener SEIU, Local 1000, argues the trial court "apparently" viewed the *state's* obligation to comply with the FLSA as conferring substantive authority *on DPA* to reduce salaries. However, DPA's pay letter did not reduce salaries but merely deferred payment, and we see nothing in the record supporting SEIU, Local 1000's claim that the trial court viewed the *absence* of specific state legislation to implement the FLSA as the *source* of DPA's authority. Section 19815.4 imposes on DPA's director the duty to "[a]dminister and enforce the laws pertaining to personnel." (§ 19815.4.) Even assuming this provision were limited to *state* laws, the state laws pertaining to personnel include *White v. Davis, supra,* 30 Cal.4th 528, which directs payment of FLSA wages during a budget impasse. Additionally, section 19815.2 gives DPA authority over the nonmerit aspects of the state personnel system. Section 19816 (see fn. 15, *ante*) gives DPA authority over administration of salaries and "other personnel-related matters." We reject the argument that the Legislature, by failing to enact legislation in the wake of *White v. Davis, supra,* 30 Cal.4th 528, intends to enact emergency appropriations or " 'close down the government' and send everyone home" in future budget impasses rather than implement the FLSA minimum wage requirements pursuant to *White v. Davis*.

■ SEIU, Local 1000, thinks it has proof that DPA *lacks* broad authority to implement FLSA, because section 19845 says DPA "is authorized to provide for overtime payments as prescribed by the [FLSA] to state employees." According to SEIU, Local 1000, this statute (1) would be unnecessary if DPA had broad authority to implement FLSA and (2) implicitly excludes broad authority by limiting the delegation of authority to overtime payments only. However, the thrust of section 19845 is the relationship of FLSA to a conflicting MOU, i.e., the statute controls unless the MOU provides a greater benefit, "except that if the provisions of a[n MOU] require the expenditure of funds, the provisions shall not become effective unless approved by the Legislature in the annual Budget Act." (§ 19845, subd. (b).) We conclude section 19845 does not deprive DPA of authority to implement the FLSA.

SEIU, Local 1000, cites *California Welfare Rights Organization v. Carleson* (1971) 4 Cal.3d 445 [93 Cal.Rptr. 758, 482 P.2d 670], as holding that the

necessity for complying with federal law is not a substitute for a legislative delegation of authority. There, however, the state welfare director, faced with a possible financial shortfall that could result in the state violating federal law, adopted a regulation converting California's entitlement program from the legislatively enacted plan of payment for full need subject to maximum schedules, into a plan for payment of full need but subject to a percent reduction system regardless of maximum schedules. (*Id.* at pp. 455–459.) The Supreme Court held the regulation invalid. (*Ibid.*) No such conversion of a legislative plan is at issue in this case.

SEIU, Local 1000, and CASE challenge the Governor's executive order, arguing it does not effectuate a right or duty emanating from existing law, and its exemptions for certain employees constitute legislation rather than administration. We need not address the arguments, or the DPA's claim that the arguments are forfeited for failure to raise them in the trial court. The judgment made no declaration regarding the executive order, and our conclusions about DPA's authority do not depend on the executive order. We therefore disregard arguments about the executive order.

To the extent that SEIU, Local 1000, argues under the "executive order" heading that *DPA's pay letter* also constitutes legislation by structuring categories of payment and exemption for certain departments (which according to CASE departed from the Governor's categories), SEIU, Local 1000, fails to persuade us that the pay letter constituted a "determination and formulation of legislative policy." In any event, we need not address the pay letter's categories because the pay letter is moot, and we will not speculate on the content of any future pay letter.

Similarly, we need not address the Controller's arguments that the pay letter was too simplistic and failed to address the following complexities: (1) some state employees are paid from continuing appropriations rather than the general fund; (2) prison employees are subject to the competing control of a federally appointed receiver; (3) whether income subject to state disability insurance would be withheld from the reduced pay; (4) complex calculations are required to determine pay for employees on military leave; (5) the pay letter did not address how to normalize state and federal tax withholdings by reason of underwithholding during the budget impasse and overwithholding during recovery periods; and (6) what will be the impact of CalPERS and other retirement deductions during minimum wage periods or recovery periods. None of these points renders the pay letter outside of DPA's jurisdiction.

We conclude DPA has authority to issue directions to the Controller regarding deferral of employee salary payments in the event that appropriations are lacking due to a budget impasse.

## IV. *Federal Minimum Wage Versus State Minimum Wage*

The Controller argues the workers must be timely paid the higher *state* minimum wage under the FLSA rather than the *federal* minimum wage. We reject the Controller's claim.

■ First, the state minimum wage law is part of the state law that must give way to DPA's powers to direct the Controller regarding payment of state workers. We have already rejected, *ante*, the Controller's argument that *Tirapelle, supra*, 20 Cal.App.4th 1317, cannot limit the Controller's power to determine whether warrants would violate *federal* law. The Controller cites *Hines v. Davidowitz* (1941) 312 U.S. 52, 66–67 [85 L.Ed. 581, 61 S.Ct. 399] for the proposition that the supremacy clause (U.S. Const., art. VI, cl. 2) imposes a duty on the Controller to obey a lawful federal statute, even assuming a state statute has directed the Controller to act in a manner inconsistent with the federal statute. However, the cited case held the federal Alien Registration Act of 1940 preempted a state's alien registration act. ■ The FLSA does not preempt state wage laws. (29 U.S.C. § 218; see fn. 8, *ante*; 29 C.F.R. § 541.4 (2009); see fn. 9, *ante*.)

Second, nothing in the FLSA or its regulations makes *state* minimum wages payable as a matter of *federal* law. The statute and regulation relied upon by the Controller do not federalize state minimum wage laws but rather indicate the FLSA does not *preempt* state law setting higher minimum wages. (29 U.S.C. § 218; see fn. 8, *ante*; 29 C.F.R. § 541.4 (2009); see fn. 9, *ante*.) The Controller cites numerous state and federal cases that merely indicate the FLSA does not preempt state law; the cited cases do not support the proposition that the FLSA federalizes state minimum wage laws. (E.g., *Harris v. Investor's Business Daily, Inc.* (2006) 138 Cal.App.4th 28, 32–33 [41 Cal.Rptr.3d 108].) To the contrary, *Cosme Nieves v. Deshler* (1986) 786 F.2d 445 (*Cosme Nieves*) said the FLSA "does not purport to incorporate existing state law . . . ." (*Id.* at p. 452.) The Controller says this opinion predated title 29 C.F.R. part 541.4 (2009), but we have seen this regulation does not help the Controller. The Controller says *Cosme Nieves* was distinguishable because there the state minimum wage law exempted the federal employee plaintiffs. However, that is the point. The plaintiffs there claimed the FLSA federalized the state law as a matter of federal law. The federal appellate court said "no."

In his reply brief on appeal, the Controller *for the first time* quotes title 29 C.F.R. part 778.5 (2009), which states in part: "Where a higher minimum wage than that set in the [FLSA] is applicable to an employee by virtue of such other legislation, the regular rate of the employee, as the term is used in the [FLSA], cannot be lower than such applicable minimum, for the words 'regular rate at which he is employed' as used in section 7 must be construed

to mean the regular rate at which he is lawfully employed." This text was mentioned but not discussed in the Controller's opening brief, which obscured the point by merely adding the words "*see also* 29 C.F.R. § 778.5" after discussing title 29 C.F.R. part 541.4 (2009).

Title 29 C.F.R. part 778.5 (2009) does not mandate payment of the *state* minimum wage for two reasons.

First, title 29 C.F.R. part 778.5 (2009) is not a regulation with the force of law. Rather, section 778.5 (2009) appears in a subchapter titled, "Statements of General Policy or Interpretation Not Directly Related to Regulations." Thus, when the Controller argues in his reply brief that title 29 C.F.R. part 541.4 (2009) (see fn. 9, *ante*) has the force of law, the Controller does not argue that part 778.5 (2009) similarly has the force of law. We do not see how it does. It is simply a general policy not directly related to regulations.

Second, even assuming title 29 C.F.R. part 778.5 (2009) has the same force of law as a regulation, its text expressly refers to the " 'regular rate at which he is employed' *as used in section 7 . . . .*" (Italics added.) The reference to section 7 is to section 7 of the FLSA, which addresses overtime only. (29 U.S.C. §§ 207 [maximum hours], 213 [exemptions from § 207].) This text, which addresses the payment of overtime, cannot dictate the level of payment of regular nonovertime wages.

The Controller cobbles together an argument that DPA improperly relied upon *White v. Davis, supra*, 30 Cal.4th 528, as requiring the *federal* minimum wage, because (1) when *White v. Davis* was decided, state employees were exempt from the California minimum wage, and (2) the Supreme Court said the state must pay "at least" the minimum wage during a budget impasse. (*Id.* at p. 578.) Our conclusions here do not depend on *White v. Davis*, which did not address the question of state versus federal minimum wage under the FLSA. We reject the Controller's insinuation that the Supreme Court, by requiring "at least" the minimum wage, authorized a higher wage during a budget impasse. The Supreme Court was comparing straight time workers (who would get minimum wage) with overtime workers, who would get full pay promptly. (*Ibid.*)

We see no legal authority that mandates payment of state minimum wages.

We conclude there is no basis to reverse the declaratory judgment.

## DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

Scotland, P. J., and Raye, J., concurred.

The petition of defendants and appellants for review by the Supreme Court was denied October 13, 2010, S185346. Werdegar, J., was of the opinion that the petition should be granted.